EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mapfre Preferred Risk Insurance Company & Reliable Financial Services, INc., Francisco Salas Castellanos<br><br>  Peticionarios<br><br><br>  v.<br><br><br>Estado Libre Asociado de Puerto Rico<br><br>  Recurrido | Certiorari<br><br>2017 TSPR 80<br><br>198 DPR ____ |

Número del Caso: CC-2016-86

Fecha: 17 de mayo de 2017

Tribunal de Apelaciones:

  Región Judicial de Bayamón

Abogado de la Parte Peticionaria:

  Lcdo. Luis Rivera Martínez

Oficina de la Procuradora General:

  Lcda. Tanaira Padilla Rodríguez
  Subprocuradora General

  Lcda. María Astrid Hernández Martínez
  Procuradora General Auxiliar

Materia: Sentencia con Opiniones de Conformidad y Opinión Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Mapfre Preferred Risk Insurance Company & Reliable Financial Services, Inc., Francisco Salas Castellanos<br><br>        Peticionarios<br><br>                v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>        Recurrido | CC-2016-0086 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 17 de mayo de 2017.

Debido a que una mayoría de este Tribunal entiende que el resultado del proceso civil de confiscación está ligado al desenlace de la causa criminal, que surge a raíz de los mismos hechos, se revoca el dictamen emitido por el Tribunal de Apelaciones.

En consecuencia, se remite el caso al Tribunal de Primera Instancia para que, tomando el resultado de la causa de acción criminal en contra del señor Jorge Salas Ríos como un hecho material, reevalúe los méritos de la Moción de Sentencia Sumaria presentada por los peticionarios y determine su procedencia.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad a la que se unió el Juez Asociado señor Colón Pérez. La Jueza Asociada señora Pabón Charneco emitió una Opinión de Conformidad.

El Juez Asociado señor Estrella Martínez emitió la siguiente expresión de conformidad:

"Estoy conforme con el dictamen contenido en la Sentencia por los fundamentos expuestos en mi Voto particular disidente emitido en Bco. Bilbao Vizcaya *et al.* v. ELA *et al.*, 194 DPR 116, 149-175 (2015)."

El Juez Asociado señor Rivera García emitió una Opinión Disidente a la que se unieron el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón.

El Juez Asociado señor Kolthoff Caraballo emitió la siguiente expresión a la cual se unió el Juez Asociado señor Feliberti Cintrón:

"Es tiempo ya que este Tribunal abandone como fundamento jurídico en este tipo de caso la doctrina de impedimento colateral por sentencia. Mucho antes que Ford Motor v. E.L.A., 174 DPR 735 (2008), el Tribunal Supremo federal resolvió que esta doctrina estatutaria no aplica en circunstancias como las del caso de autos, pues el *quantum* de prueba en la causa criminal y el requerido en la acción civil que establece la ley en una demanda de impugnación de confiscación son distintas. U.S. v. One Assortment of 89 Firearms, 465 U.S. 354 (1984); One Lot Emerald Cut Stones v. United States, 409 U.S. 232 (1972); Helvering v. Mitchell, 303 U.S. 391 (1938).

De hecho, este mismo es el racional que nos ha servido de fundamento principal al resolver en el ámbito administrativo que el hecho de que una causa criminal no prevalezca no implica que surja un impedimento para que se inicie o se continúe con una acción administrativa. Cruz v. Garrido Morales, 58 DPR 653 (1941).

Sin embargo, recientemente, en Coop. Seg. Múlt v. E.L.A., 180 DPR 655 (2011), este Tribunal volvió a utilizar como fundamento la doctrina de impedimento colateral por sentencia, **aunque, de forma contradictoria introdujo elementos de análisis que se precisan solo ante la realidad de que dicha doctrina no aplica.**

La controversia jurídica en este tipo de caso no gira en torno a la doctrina de impedimento colateral por sentencia, sino de la cláusula de **doble exposición** establecida en la Constitución de Estados Unidos como en la Constitución de Puerto Rico. Emda. V, Const. EE.UU., LPRA, Tomo 1, ed. 2016, págs. 190-191; Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2016, págs. 354-355. Esto es, en la medida que la confiscación que establece el Estado pueda entenderse principalmente como una sanción a la que el ciudadano ya estuvo expuesto y por la que fue absuelto (o la causa desestimada), la acción de retener el bien licito confiscado chocaría con la cláusula constitucional que prohíbe la doble exposición. U.S. v. One Assortment of 89 Firearms, supra.

Es en este contexto, y solo en ese contexto, que se hace necesario el análisis conducente a si la Ley Uniforme

de Confiscaciones de 2011, Ley Núm. 119-2011, 34 LPRA secs. 1724-1724w, es una de naturaleza criminal-punitiva o civil-remedial.

Como correctamente esbozó el Juez Asociado señor Rivera García en su Opinión Disidente en <u>Bco. Bilbao Vizcaya v. ELA</u>, 195 DPR 39 (2016), el análisis en este tipo de circunstancias lo estableció el Tribunal Supremo federal en <u>U.S. v. Ward</u>, 448 U.S. 242 (1980). Ese debe ser el *test* a seguir y, al aplicarlo a la Ley Núm. 119-2011, *supra,* concluyó que la misma tiene un fin civil-remedial.

Por todo lo anterior, respetuosamente disiento."


                              Juan Ernesto Dávila Rivera
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mapfre Preferred Risk Insurance Company & Reliable Financial Services, Inc., Francisco Salas Castellanos<br><br>Peticionarios<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Recurrido | **Núm.** CC-2016-0086 |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico a 17 de mayo de 2017.

Estoy conforme con el resultado del dictamen en el caso de epígrafe por la razón que expresé en mi Opinión de Conformidad en *Banco Bilbao Vizcaya v. Universal Insurance Co.*, 195 D.P.R. 39 (2016). Es decir, por considerar que el resultado a que hoy se llega debe fundamentarse en nuestro precedente, *Cooperativa de Seguros Múltiples v. Estado Libre Asociado de Puerto Rico*, 180 D.P.R. 655, 680 (2011). Allí indicamos que "[a]l amparo de **nuestras interpretaciones constitucionales** y cónsono con la normativa federal vigente, hemos vinculado el resultado del proceso civil de confiscación al desenlace de la causa criminal contra la persona imputada de delito a base el cual se justifica la confiscación." (Énfasis nuestro.)

La importancia y recurrencia de la controversia que hoy atendemos, nos exigía abundar sobre las consideraciones constitucionales que intimamos en *Seguros Múltiples*, de suerte que logremos finiquitar esta controversia. En ese tenor, considero que el razonamiento en *Cooperativa de Seguros Múltiples*, marcaba la ruta a seguir en esta ocasión y lamento que no haya sido así.


                            Anabelle Rodríguez Rodríguez
                                  Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Mapfre Preferred Risk Insurance Company & Reliable Financial Services, Inc., Francisco Salas Castellanos<br><br>Peticionarios<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Recurrido | CC-2016-0086 | *Certiorari* |

Opinión de Conformidad emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 17 de mayo de 2017.

Estoy conforme con el resultado anunciado en la sentencia que antecede. Debido a que con la aprobación de la Ley Núm. 119-2011, *infra,* no se incluyó disposición estatutaria alguna que prohíba la aplicación de la doctrina de impedimento colateral por sentencia en los procedimientos de confiscaciones, y que no nos compete como parte de nuestra labor judicial suplir al estatuto esa prohibición ante un silencio estatutario, procede revocar el dictamen emitido por el foro *a quo.*

Con ello en mente, pasemos a delinear los hechos que dieron génesis a la controversia de autos.

I

Como cuestión de umbral y en aras de contextualizar la controversia de autos, es necesario hacer un recuento breve de la legislación que se ha aprobado en nuestra jurisdicción para regular las confiscaciones civiles.

El Estado promulgó la Ley Núm. 93-1998, *supra*, como parte del esfuerzo que llevó a cabo por varias décadas para uniformar los procedimientos de confiscación previamente esparcidos en distintas leyes especiales. *Véase*, *Coop. Seg. Mult. v. ELA,* 180 DPR 655, 663 (2011). Con su aprobación se derogó la Ley Núm. 39 de 4 de julio de 1960, según enmendada, conocida como Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, 34 LPRA ant. secs. 1721 y 1722, la cual reguló las confiscaciones civiles en nuestra jurisdicción por aproximadamente tres (3) décadas.

Bajo las disposiciones de las derogadas leyes uniformes de confiscaciones de 1960 y 1988, y sus posteriores enmiendas, hubo un "decidido desarrollo de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito". *Coop. Seg. Mult. v. ELA*, supra*,* pág. 676. Así pues, y aunque la Asamblea Legislativa repetidamente ha adoptado la modalidad de confiscación civil o *in rem vis-à-vis* la confiscación criminal o *in personam,*[1] desde *Carlo v. Srio. de Justicia,* 107 DPR 356

---

[1] Véanse, Ley Núm. 119-2011, conocida como Ley Uniforme de Confiscaciones de 2011, 34 LPRA sec. 1724 et seq.; Ley Núm. 93 de 13

(1978), nuestro desarrollo jurisprudencial constantemente ha utilizado la doctrina de impedimento colateral por sentencia al momento de adjudicar controversias suscitadas bajo los estatutos de confiscación anteriores. Amparados en esa doctrina, se trazó una marcada tendencia de condicionar la acción civil de confiscación al resultado de la acción penal. Por consiguiente, un dictamen de culpabilidad en la acción penal era condición *sine qua non* para continuar con el proceso civil de confiscación. *Véanse*, por ejemplo, *Coop. Seg. Mult. v. ELA*, supra; *Díaz Morales v. Depto. de Justicia*, 174 DPR 956 (2008) (*Per Curiam*); *Ford Motor v. ELA*, supra; *Suárez v. ELA*, 162 DPR 43 (2004) (*Per Curiam*); *Del Toro Lugo v. ELA*, 136 DPR 973 (1994).

Un análisis de los referidos pronunciamientos jurisprudenciales demuestra que de la misma manera que este Tribunal reiteradamente ha reconocido el carácter independiente entre una acción *in rem* y la acción *in personam,* hemos sido consistentes al enfatizar que el resultado de la acción penal que dio lugar a la confiscación es determinante y está necesariamente atado al proceso de confiscación civil. A esos efectos, tan reciente como en el 2011, expresamos que "no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sentencia, sino de excepciones a la independencia del

---

de julio de 1988, según enmendada, conocida como Ley Uniforme de Confiscaciones de 1988, 34 LPRA ant. sec. 1723 et seq; la Ley Núm. 39 de 4 de julio de 1960, según enmendada, conocida como Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, 34 LPRA ant. secs. 1721 y 1722.

proceso *in rem* fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito". *Coop. Seg. Mult. v. ELA*, supra, pág. 676.

Es menester apuntar que mientras se desarrolló la referida progenie jurisprudencial, la Asamblea Legislativa promulgó la Ley Núm. 32-2000, *supra*, con el propósito de enmendar la Ley Núm. 93-1988, *supra*. La Ley Núm. 32-2000, *supra*, enmendó el Art. 2 de la Ley Núm. 93-1988 para, *inter alia*, añadir el inciso (c) que **expresamente excluyó** la aplicación de la doctrina de impedimento colateral por sentencia en casos de confiscación. A esos efectos, la mencionada enmienda establecía lo siguiente:

> [e]l resultado favorable al acusado o imputado en cualquiera de las etapas de la acción criminal **no será impedimento para**, **ni tendrá efecto de cosa juzgada sobre**, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal. Art. 2(c) de la Ley Núm. 93-1988, según enmendado por la Ley Núm. 32-2000 (2000 (Parte 1) Leyes de Puerto Rico 376). (Énfasis suplido).

Apenas tres (3) años después de aprobar la Ley Núm. 32-2000, *supra*, la Asamblea Legislativa promulgó la Ley Núm. 18-2003 (2003 (Parte 1) Leyes de Puerto Rico 64-66), con el único propósito de derogar expresamente la precitada enmienda. Ello, para atemperar el estatuto confiscatorio a los pronunciamientos jurisprudenciales emitidos hasta el momento con relación a este tema. Específicamente, la Asamblea Legislativa reconoció que el inciso (c) que añadió la Ley Núm. 32-2000, *supra*, para excluir la aplicación de la doctrina de impedimento colateral por sentencia en un

procedimiento de confiscación, era tajantemente incompatible con nuestros pronunciamientos en *Carlo v. Srio. de Justicia*, supra, y en *Del Toro Lugo v. ELA*, supra.[2] Con su proceder, la Asamblea Legislativa fue diáfana en su intención de regresar a la normativa adoptada por este Foro al interpretar los postulados de la Ley Núm. 93-1988, *supra*, a saber: condicionar la acción civil de confiscación al resultado de la acción penal.[3]

La Asamblea Legislativa procuró evitar que la enmienda introducida con la Ley Núm. 32-2000, *supra*, produjera resultados inconsistentes con lo pronunciado hasta ese momento por este Tribunal. Su desacierto con la prohibición de la aplicación de la doctrina de cosa juzgada que introdujo la Ley Núm. 32-2000, *supra*, era evidente. Tanto es así que promulgó la Ley Núm. 43-2004 (2004 (Parte 1) Leyes de Puerto Rico 224-26) para enmendar la recién

---

[2] La Asamblea Legislativa explicó que: "[l]a [Ley Núm. 32-2000] enmendó la [Ley Núm. 93-1988]. Esta Ley enmendó los Artículos 2,... de la Ley Núm. 93. El propósito principal de esos cambios era establecer mediante legislación que '…el resultado favorable al acusado o imputado en cualquiera de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada, sobre la acción civil de confiscación, aunque esta se base en los hechos imputados en la acción penal.' **Todo ello sin tomar en consideración lo resuelto por el Tribunal Supremo en *Carlo vs. Secretario de Justicia*, 10 DPR 356 (1978) y *Carlos del Toro Lugo vs. ELA*, 94 JTS 119. . .** La enmienda del Artículo 2 creó controversia en cuanto a la forma y manera en que los tribunales deben disponer de los casos sobre impugnación de confiscación donde el acusado es absuelto en los méritos, no se determina causa en la vista preliminar o se suprime la evidencia en el caso criminal. Este hecho ha dilatado y complicado más todas las confiscaciones en que el caso criminal se resuelve de manera favorable para el acusado. El propósito de la presente Ley es corregir esa situación eliminando el inciso (c) del Artículo 2 de la Ley de Confiscaciones, para que se ajuste al ordenamiento jurídico vigente y sobre todo al mandato constitucional". Véase, Exposición de Motivos de la Ley Núm. 18-2003 (2003 (Parte 1) Leyes de Puerto Rico 64-65).

[3] Véase, Informe sobre el P. de la C. 1972 de la Comisión de lo Jurídico del Senado de Puerto Rico, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, págs. 1-3.

aprobada Ley Núm. 18-2003, *supra*, a los únicos efectos de especificar su fecha de vigencia. *A posteriori,* quedó claro que la Ley Núm. 18-2003, *supra*, regiría inmediatamente después de su aprobación y **sería retroactiva al 14 de enero de 2000, fecha en la que se aprobó la Ley Núm. 32-2000, *supra,* para prohibir el uso del impedimento colateral por sentencia.** Para efectos prácticos, luego de la aprobación de la Ley Núm. 43-2004, *supra*, la prohibición expresa introducida por la Ley Núm. 32-2000, *supra*, nunca existió *de jure.* [4]

Como discutiré más adelante, nada en el *texto estatutario* aprobado en el 2011 nos permite concluir que la Asamblea Legislativa prohibió el uso de la doctrina de impedimento colateral por sentencia en casos de confiscaciones. Como veremos a continuación, cuando sea necesario hacer un ejercicio de hermenéutica legal como parte del proceso de adjudicación, el *texto estatutario* es nuestra primera parada.

En numerosas ocasiones nos hemos visto precisados a reiterar las normas de interpretación estatutaria que rigen en nuestro ordenamiento. *Romero v. Cabrer Roig*, 191 DPR 643 (2014); *Cruz Parilla v. Depto. Vivienda*, 184 DPR 393

---

[4] La Asamblea Legislativa explicitó que "la intención de [la] Asamblea Legislativa, al aprobar la Ley Núm. [18-2003], *supra*, fue derogar cualquier efecto detractor que tuviera la Ley Núm. [32-2000], *supra,* en los derechos constitucionales de las personas. **Esto es, que para todos los fines jurídicos dicha enmienda nunca existió.** Por lo que, obviamente, será de aplicación a todo proceso, judicial o administrativo, que no haya advenido final y firme al momento de la aprobación de esta Ley". Véase, Exposición de Motivos de la Ley Núm. 43-2004 (20004 (Parte 1) Leyes de Puerto Rico 225) (Énfasis suplido). *Véase,* además, *Suarez v. ELA*, supra, a las págs. 57-59.

(2012). En este ejercicio de hermenéutica debemos acudir en primer lugar al **texto** de la ley. *Cruz Parilla v. Depto. Vivienda*, supra, pág. 404. Si este es claro y libre de toda ambigüedad, "la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14. De modo que, "si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa". *Soc. Asist. Leg. v. Ciencias Forenses*, 179 DPR 849, 862 (2010). Los tribunales solo deben asegurarse de cumplir con los propósitos legislativos ante una ambigüedad en el texto de la ley. *Cruz Parilla v. Depto. Vivienda*, *supra*, pág. 404.

Con ello en mente, pasemos a analizar el caso de autos a la luz de las disposiciones de la Ley Núm. 119-2011.

II.

A.

La Ley Núm. 119-2011, *supra*, es el estatuto que actualmente rige el procedimiento de confiscación en Puerto Rico. Su aprobación derogó la Ley Núm. 93-1988, *supra*, e instituyó un trámite expedito y uniforme para la confiscación de bienes por parte del Estado. Asimismo, y particularmente pertinente a la controversia ante nos, la Ley Núm. 119-2011, *supra*, **mantuvo inalterada la naturaleza *in rem* de las confiscaciones en nuestra jurisdicción, modalidad que ha regido en nuestro ordenamiento por varias décadas.**

En cuanto a este particular, en el Artículo 2 de la Ley Núm. 119-2011, *supra*, el Legislador dispuso que: "[…] se **sostiene y reafirma** la naturaleza *in rem* de las confiscaciones, independientemente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza".[5] Del texto estatutario podemos colegir que la Asamblea Legislativa mantuvo intacta la política pública que ha regido en nuestra jurisdicción en cuanto a la naturaleza *in rem* de las confiscaciones. En varios artículos de la Ley Núm. 119-2011, *supra*, el legislador ratificó que la confiscación es un procedimiento civil que va dirigido contra la cosa misma y por consiguiente, es independiente de cualquier otro proceso que se pueda llevar contra el dueño o el poseedor de los bienes ocupados.[6] **En otras palabras, la Ley Núm. 119-2011, *supra*, no añadió o alteró nada en nuestro ordenamiento con respecto a las confiscaciones civiles.**

Nótese que el legislador utilizó el vocablo "reafirmar". Ello significa que la Asamblea Legislativa afirmó nuevamente lo que ya existía en nuestro ordenamiento jurídico. Particularmente, ratificó que la acción de confiscación es independiente de cualquier otra acción, ya sea penal, administrativa o de otra índole. No obstante, ello ha sido así en nuestro ordenamiento por décadas. Como vimos, esta independencia es precisamente lo que este

---

[5] Art. 2 de la Ley Núm. 119-2011, *supra*. (Énfasis suplido).

[6] Véanse, Arts. 2, 8 y 15 de la Ley Núm. 119-2011, *supra*.

Tribunal consistentemente señaló en las ocasiones que interpretó las disposiciones de la derogada Ley Núm. 93-1988, *supra*, y aplicó la doctrina de impedimento colateral por sentencia.

                              B.

Un análisis del **texto** de la Ley Núm. 119-2011, *supra*, nos demuestra que la Asamblea Legislativa no fue diáfana en su intención de desligar totalmente el desenlace del proceso penal de la acción civil de confiscación como lo hizo en el año 2000 mediante la aprobación de Ley Núm. 32-2000, *supra*. A diferencia de la Ley Núm. 32-2000, *supra*, es importante enfatizar que la Asamblea Legislativa no incluyó prohibición expresa alguna en la Ley Núm. 119-2011, *supra*, para vedar la aplicación de la doctrina de impedimento colateral por sentencia en pleitos de impugnación de confiscación. Este factor es clave, ya que, como vimos, la Asamblea Legislativa conocía la línea jurisprudencial que habíamos construido por décadas, y en vez de incluir –como había hecho anteriormente– una disposición estatutaria en la que se prohibiera el uso del impedimento colateral por sentencia, no lo hizo. Por lo tanto, no podemos concluir que los tribunales están impedidos de utilizar la determinación favorable obtenida en el proceso penal para disponer de la acción civil de confiscación.[7]

---

[7] Cabe mencionar que el 10 de febrero de 2017 se presentó ante la Cámara de Representantes el P. de la C. 776 de 10 de febrero de 2017, 1ra Sesión Ordinaria, 18va Asamblea Legislativa. Este propone

La aprobación de la Ley Núm. 119-2011, *supra*, no fue más que un ejercicio legislativo en el que la Asamblea Legislativa confeccionó una Ley nueva, pero acabó repitiendo lo que ha sido el estado de derecho por décadas, a saber: que la confiscación era un procedimiento civil *in rem* **independiente** de la acción criminal *in personam.* Este Foro ha enfatizado a través de los años que "la confiscación civil constituye una acción **independiente** del resultado de la acción penal". *Del Toro Lugo v. E.L.A.,* supra, pág. 983 (Énfasis suplido) y que, "la confiscación civil es una acción **independiente** de la acción penal". *Coop. Seg. Mult. V. E.L.A.,* supra, pág. 668, (Énfasis suplido). Véase, además, *Ford Motor v. E.L.A*, supra, *pág. 741.*

---

enmiendas a los Artículos 2, 8 y 15 de la Ley Núm. 119-2011, *supra*, con el propósito de aclarar que:

> [N]o obstante la naturaleza in rem de la confiscación, por excepción se aplicará la doctrina de cosa juzgada e impedimento colateral por sentencia de forma automática los casos de naturaleza penal en que, luego de una adjudicación de los hechos en sus méritos, la acción no prospere, resulte en una absolución, el imputado de delito obtenga un resultado favorable, y final, por cualquier fundamento, o la posibilidad que tiene el Estado para encausar a la persona imputándole la comisión del delito se extinga. P. de la C. 776, *supra*, pág. 1

De la Exposición de Motivos de este proyecto resulta evidente que la Asamblea Legislativa conoce la línea jurisprudencial que este Tribunal ha trazado a través de los años. Específicamente, está consciente de la constante inclinación de este Tribunal hacia supeditar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito que dio base a la confiscación, independientemente de que la absolución en el caso criminal no hubiera sido en los méritos. P. de la C. 776, *supra*, págs. 3-5.

En fin, la Asamblea Legislativa actualmente está considerando un proyecto de ley que expresamente reconoce la aplicabilidad de la doctrina de cosa juzgada e impedimento colateral por sentencia en los procesos de confiscación. Ello, en aras de "establecer meridianamente claro lo que debe proceder en tales circunstancias" y aliviar la congestión de los tribunales que provoca a su vez pérdidas económicas para las partes. P. de la C. 776, *supra*, pág. 5.

Sería erróneo y contrario a nuestro desarrollo jurisprudencial concluir que como la Asamblea Legislativa reiteró e incluyó en el texto de la ley que el proceso de confiscación civil es uno independiente del proceso penal, lo que verdaderamente quiso decir es que estaba vedado utilizar la doctrina de impedimento colateral por sentencia en un procedimiento de impugnación de confiscación civil. Ese razonamiento tendría el efecto de **suplir** esa intención al texto de la Ley Núm. 119-2011, *supra*, cuando esa prohibición simple y sencillamente no existe en el texto estatutario.

Como vimos, al aprobar la Ley Núm. 32-2000, *supra*, se prohibió expresamente el uso de la doctrina de impedimento colateral por sentencia; no obstante, en esta ocasión la Asamblea Legislativa no lo hizo. No existe ninguna sección en el texto de la Ley Núm. 119-2011, *supra*, que prohíba el uso de la doctrina de impedimento colateral por sentencia en estos casos. Aún si buscáramos esa prohibición fuera del texto, ni de la Exposición de Motivos ni del historial legislativo surge una intención de eliminar la aplicación de la figura de impedimento colateral por sentencia en estos procesos. La Asamblea Legislativa lo que en efecto hizo fue repetir una norma vigente en nuestro ordenamiento; por lo tanto, no vemos razón para que nos desviemos de nuestra línea jurisprudencial en este tema.[8]

---

[8] En *Carlo v. Srio. de Justicia*, 107 DPR 356 (1978), resolvimos que la absolución en los méritos adjudica con finalidad irrevisable el hecho central, tanto del caso criminal como el de confiscación, de que el

Al ejercer nuestra función judicial, no podemos alejarnos de las disposiciones expresas incluidas en la Ley Núm. 119-2011, *supra*, para suplir una prohibición que el legislador no incluyó en el texto del estatuto. Ese proceder socavaría las normas de interpretación estatutaria y constituiría un ejercicio de legislación judicial rechazado por nuestro ordenamiento constitucional. Según

---

vehículo no se utilizó para transportar mercancía ilícita. Como corolario, una absolución en los méritos en el caso criminal constituye impedimento colateral por sentencia en el pleito de impugnación de confiscación que surge a raíz de los mismos hechos.

En *Del Toro Lugo v. E.L.A*, 136 DPR 973 (1994), resolvimos que una sentencia final y firme de un tribunal respecto a una determinación de no causa en vista preliminar constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en el pleito de impugnación de confiscación. Asimismo, resolvimos que una determinación final y firme con relación a la supresión de evidencia ilegalmente obtenida, realizada en el procedimiento penal que da base a la confiscación, también tendrá efecto de cosa juzgada en su modalidad de impedimento colateral por sentencia en la acción *in rem.*

En *Suárez v. E.L.A*, 162 DPR 43 (2004) (*Per Curiam*), resolvimos que una sentencia final y firme desestimando los cargos imputados por violación a los términos de juicio rápido según dispuestos en la Regla 64(n)(5) de Procedimiento Criminal, supra, constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en el proceso civil de confiscación. Máxime cuando habían transcurrido cerca de dos años y medio desde la desestimación de los cargos sin que se hubieran presentado nuevas denuncias.

En *Ford Motor Credit v. E.L.A*, 174 DPR 735 (2008), resolvimos que el archivo y sobreseimiento de una causa penal, al amparo de los procedimientos de desvío regulados por la Regla 247.1 de Procedimiento Criminal, *supra*, y el Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, *supra*, constituye impedimento colateral por sentencia respecto a la acción de impugnación de una confiscación.

En *Díaz Morales v. Depto. de Justicia*, 174 DPR 956 (2008) (*Per Curiam*), resolvimos que la confiscación de un vehículo incautado a raíz de alegadas violaciones al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico de 1971, no puede subsistir tras el archivo definitivo de la querella presentada en contra de un menor como consecuencia de haber cumplido cabalmente con las condiciones de un programa de desvío bajo la Ley Núm. Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986, según enmendada, 34 LPRA sec. 2201 *et seq*.

En *Coop. Seg. Mult. v. E.L.A.*, 180 DPR 655 (2011), resolvimos que la muerte de una persona convicta de delito, antes de que la sentencia condenatoria haya advenido final y firme, tiene el efecto de extinguir la acción confiscatoria.

hemos discutido, lo determinante es el **texto** que aprobó el legislador, no lo que quería aprobar y no aprobó. Solo cuando existe ambigüedad en el texto estatutario podemos recurrir a la intención legislativa. **Nada** en la Ley Núm. 119-2011, *supra*, es ambiguo: meramente se repite el derecho vigente y por consiguiente se convalida el desarrollo jurisprudencial que este Tribunal ha pautado con respecto al tema. Ante ese escenario, no podemos acudir a una alegada intención legislativa para resolver la controversia de autos.[9]

III.

A.

La Moción de Sentencia Sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. Procede en los casos que no existe controversia **real y sustancial** en cuanto a **los hechos materiales**, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho. *Oriental Bank Trust v. Perapi S.E.,* 192 DPR 7 (2014), *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010).

---

[9] Debido a que esta controversia puede resolverse mediante interpretación estatutaria, no hay razón para atender los asuntos constitucionales en cuanto a la aplicación de la figura de impedimento colateral por sentencia a estos casos. Debemos recordar que "los tribunales no debemos entrar a considerar la constitucionalidad o inconstitucionalidad de una ley o de una actuación a menos que ello sea imprescindible y que la controversia bajo consideración no pueda ser adjudicada por otros fundamentos". *Pueblo v. Yip Berrios,* 142 DPR 386, 421 (1997) (Citas omitidas).

En nuestro ordenamiento el mecanismo de Sentencia Sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V. En esencia, esta regla dispone que para emitir una adjudicación de forma sumaria es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y alguna otra evidencia surja que no existe controversia real y sustancial en cuanto a ningún hecho esencial y pertinente y que, como cuestión de derecho, se debe dictar Sentencia Sumaria a favor de la parte promovente. Regla 36.3(e) de Procedimiento Civil de 2009, *supra.* Véanse, además, *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 430; Const. José Carro v. Mun. Dorado, 186 DPR 113, 128 (2012).

Por lo tanto, procede dictar Sentencia Sumaria cuando, evaluados los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Const. José Carro v. Mun. Dorado, *supra,* pág. 129; *Nieves Díaz v. González Massas*, supra, pág. 848. Hemos establecido que **un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable.** Ramos Pérez v. Univisión, 178 DPR 2000, 213 (2010) citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609. La Regla 36.1

de Procedimiento Civil de 2009 se refiere a estos como hechos "esenciales y pertinentes…". 32 LPRA Ap. V.

B.

Como discutí anteriormente, desde *Carlo v. Srio. de Justicia,* supra, este Tribunal ha condicionado la acción civil de confiscación al resultado de la acción penal. Hemos enfatizado que el resultado de la acción penal que motivó la confiscación es determinante y está ligado al proceso de confiscación civil. *Véanse*, *Coop. Seg. Mult. v. ELA*, supra; *Díaz Morales v. Depto. de Justicia*, 174 DPR 956 (2008) (*Per Curiam*); *Ford Motor v. ELA*, supra; *Suárez v. ELA*, 162 DPR 43 (2004) (*Per Curiam*); *Del Toro Lugo v. ELA*, 136 DPR 973 (1994). Como corolario, dicho resultado es indudablemente un hecho material –esencial y pertinente– que debe ser considerado a la hora de determinar si procede o no dictar sentencia sumariamente.

No surge de los autos el dictamen del foro de instancia decretando el archivo y sobreseimiento de la causa criminal contra el señor Salas Ríos, ni prueba alguna que lo acredite. Ahora bien, de los autos surgen alegaciones que apuntan a que el señor Salas Ríos en efecto se sometió a un programa de desvío bajo la Regla 247.1 de Procedimiento Criminal, *supra*. También hay prueba de que el foro de instancia requirió al Estado que informara sobre el progreso de dicho programa. Luego de que el foro de instancia emitiera su Resolución, los peticionarios le solicitaron que hiciera una determinación adicional de

hecho a los efectos de que los cargos criminales presentados contra el señor Salas Ríos habían sido archivados en virtud de la Regla 247.1 de Procedimiento Criminal, *supra.* Surge de los autos que el Estado, en lugar de negar que los cargos contra el señor Salas Ríos se hubieran archivado, se limitó a indicar que el resultado de dicho proceso criminal era irrelevante. Así las cosas, el foro de instancia denegó la solicitud de determinación adicional de hechos. Por otro lado, tras evaluar el recurso de *certiorari* presentado por los peticionarios, el foro *a quo* concluyó en su Resolución que "[e]n el presente caso, el imputado del delito obtuvo una determinación judicial favorable en la causa criminal". Empero, sostuvo que el foro de instancia no erró al determinar que un resultado favorable en la causa criminal *per se* no era suficiente para declarar con lugar la impugnación de confiscación.

IV.

Por todo lo antes expuesto, estoy conforme con el resultado anunciado en la Sentencia que antecede. Debido a que la Ley Núm. 119-2011, *supra*, no alteró nada en nuestro ordenamiento con respecto a las confiscaciones civiles, el resultado del proceso civil de confiscación sigue estando atado al desenlace del proceso criminal que surge a raíz de los mismos hechos que motivaron la confiscación. De modo que erró el Tribunal de Apelaciones al denegar la expedición del auto solicitado por entender que el resultado favorable de la causa criminal en contra del

señor Salas Ríos, sin más, era insuficiente para declarar con lugar la demanda de impugnación de confiscación y ordenar la devolución ulterior del vehículo confiscado.


                                    Mildred G. Pabón Charneco
                                         Jueza Asociada

| | |
|---|---|
| Mapfre Preferred Risk Insurance Company & Reliable Financial Services, Inc., Francisco Salas Castellanos | *Certiorari* |
| Peticionarios | |
| v. | CC-2016-0086 |
| Estado Libre Asociado de Puerto Rico | |
| Peticionario | |

**Opinión disidente emitida por el Juez Asociado señor Rivera García a la que se unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón.**

En San Juan, Puerto Rico, a 15 de mayo de 2017.

Una vez más nos vemos en la obligación de disentir de una mayoría de este Tribunal que insiste en **atar y condicionar** inexorablemente el proceso criminal que se lleva contra una persona, con el proceso civil de impugnación de una confiscación *in rem*. Ello, en clara contravención a la nueva normativa establecida en la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, según enmendada, 34 LPRA secs. 1724 *et seq.*

En esta ocasión, varios miembros de esta Curia resuelven que se puede disponer del proceso de impugnación de la confiscación, a la luz de la culminación de un proceso criminal por el

**sobreseimiento del imputado** en virtud la Regla 247.1 de Procedimiento Criminal, 34 LPRA Ap. II.

Ahora bien, dicha determinación tiene el efecto de anular toda confiscación, **automáticamente y sin mayor consideración**, fundamentándose **exclusivamente** en la determinación favorable obtenida a nivel penal, aun cuando ésta se debió a planteamientos ajenos a la legalidad y corrección de la confiscación que no conllevan la no utilización de la propiedad confiscada en una actividad ilegal. En ese sentido, se invalida la clara y expresa independencia del proceso penal y el proceso civil de confiscación establecida explícitamente por la Asamblea Legislativa en la Ley Uniforme de Confiscaciones de 2011, *supra*. Con este proceder se crea una relación de **dependencia** entre ambos procesos, en la cual se **condiciona** la validez de la confiscación a la subsistencia y existencia del proceso criminal. Luego de la promulgación de la Ley Uniforme de Confiscaciones de 2011, *supra*, dicha determinación no tiene cabida en nuestro ordenamiento jurídico.

En circunstancias como las del presente caso, no procedía reconocer que se puede anular una confiscación basados exclusivamente en el resultado favorable obtenido en la esfera penal. Como hemos expresado anteriormente, en derecho no se sostiene tal conclusión. Especialmente cuando no se trata de acciones en que estén envueltas las mismas partes, el *quantum* de prueba en el ámbito criminal es mucho mayor al requerido en el ámbito civil, el peso de la prueba en casos en que se impugna la confiscación lo tiene el demandante y debe partirse de la premisa de que existe una fuerte presunción de corrección y legalidad de las confiscaciones que realiza el Estado. En

vista de ello, este Tribunal estaba llamado a resolver que no se puede disponer de una acción civil de impugnación de confiscación a favor de la parte demandante cuando el **único fundamento** expuesto es el resultado favorable obtenido en la esfera penal. Así, pues, en ausencia de algún otro planteamiento que ameritara un dictamen sumario, e independiente del desenlace a favor del imputado de delito a raíz de los mismos hechos que motivaron la confiscación, lo que procedía era confirmar    -por ser correcto- el dictamen recurrido. Como consecuencia, **disiento**.

En vista de la conclusión a la que llega una mayoría de esta Curia, nos vemos en la obligación de reiterar nuestros pronunciamientos en Banco Bilbao Vizcaya, *et al.* v. ELA, 195 DPR 39, 56 (2016) (Opinión disidente), y Mapfre Praico Insurance Company, *et al.* v. ELA, 195 DPR 86, 90 (2016) (Opinión de conformidad). Al igual que lo hicimos en aquellas ocasiones, primeramente, expondremos una perspectiva general del proceso de confiscación dirigida, particularmente, a resaltar las diferencias entre una confiscación civil y una confiscación criminal. Esto, ya que, nuevamente, una mayoría de este Tribunal parece haberlas pasado por alto. En segunda instancia, revisitaremos los pronunciamientos emitidos anteriormente por este Tribunal y en los cuales se aplicó la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia. En tercer lugar, expondremos brevemente los fundamentos que sustentaron la referida jurisprudencia. Finalmente, expondremos las disposiciones de la Ley Uniforme de Confiscaciones de 2011, que excluyen la aplicación de la doctrina de impedimento colateral por

sentencia a estos casos y no permiten que se condicione el proceso civil de confiscación a las incidencias suscitadas en la esfera penal como se hizo en el pasado. Veamos.

I

## A. Confiscación civil *vis a vis* la confiscación criminal

La confiscación es el acto mediante el cual el Estado, representado en este caso por el Poder Ejecutivo, priva a una persona de su propiedad sin compensación económica, basado únicamente en que dicha propiedad fue utilizada en la comisión de ciertos delitos predeterminados por la Asamblea Legislativa o porque tal bien es producto o resultado de una conducta prohibida por ley.[10] En ese esquema, le corresponde exclusivamente al Poder Legislativo determinar bajo qué circunstancias, condiciones y procedimientos particulares el Estado está facultado para confiscar una propiedad involucrada en una actividad delictiva, dentro de los parámetros constitucionales aplicables.[11] En este ejercicio, la Asamblea Legislativa podría instituir el proceso de confiscación bajo una de **dos modalidades**: (1) mediante una confiscación de carácter criminal, conocida como confiscación *in personam*; o (2) por vía

---

[10] Ford Motor v. ELA, 174 DPR 735, 741 (2008); Suárez v. ELA, 162 DPR 43 (2004); Del Toro v. ELA, 136 DPR 973, 980-981 (1994).

[11] En el caso de Puerto Rico, el poder de confiscación del Estado está supeditado a las exigencias constitucionales incluidas en el Art. II, Sec. 7 de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. PR, LPRA, Tomo I y la Enmienda Quinta y Catorceava de la Constitución de Estados Unidos, USCA Enmd. V y XIV, las cuales garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley.

de una confiscación de índole civil, mejor conocida como confiscación *in rem*.[12]

En el caso de que la Asamblea Legislativa opte por la primera modalidad, instituiría entonces la confiscación como una penalidad adicional contra una persona que ha sido convicta de delito. Es por esto que la confiscación *in personam* forma parte integral del procedimiento criminal, ya que se trata de una acción directa contra el propietario o poseedor de la propiedad a ser incautada y cuya procedencia va a depender ineludiblemente de que la persona salga culpable del delito imputado. Únicamente en esas circunstancias se le podría confiscar la propiedad como una sanción adicional. Por lo tanto, bajo este procedimiento, el involucramiento de la persona en la actividad delictiva, y **eventual convicción**, es el fundamento que da base a la confiscación de la propiedad. En otros términos, en la medida que el Estado no logré probar la culpabilidad de la persona más allá de duda razonable, la confiscación no sería válida.

Por otra parte, si el Poder Legislativo decidiera instituir la segunda modalidad de confiscación, se establecería entonces un procedimiento civil *in rem* que va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta.[13] Por ello, la pregunta a dilucidar bajo este procedimiento es la siguiente: ¿la propiedad confiscada fue utilizada para la comisión de una actividad delictiva? Siendo así, **bajo la modalidad de confiscación in rem la interrogante de quién**

---

[12] Mapfre PRAICO, *et al*. v. ELA, 188 DPR 517, 525 (2013); Coop. Seg. Múlt. v. ELA, 180 DPR 655, 664 (2011).
[13] López v. Secretaria, 162 DPR 345, 352 (2004); Negrón v. Srio. de Justicia, 154 DPR 79,87 (2001).

**utilizó la propiedad es, como regla general, impertinente porque el objetivo principal de esta acción es demostrar que la propiedad fue utilizada en una actividad prohibida por ley, independientemente de quién lo hizo**. En ese sentido, no se trata de adjudicarle a la propiedad la capacidad de delinquir y tratarla como la autora de un delito, sino de establecer mediante preponderancia de la prueba que la propiedad fue empleada en la comisión de una actividad ilegal. Conforme a ello, en todos los casos de confiscación resueltos por esta Curia se ha reiterado que los únicos elementos pertinentes a la determinación de si procede una confiscación civil son los siguientes: (1) si existe prueba suficiente y preponderante de que se ha cometido un delito y (2) si existe un nexo entre la comisión del delito y la propiedad confiscada.[14]

Nótese que contrario a la confiscación *in personam*, **la confiscación *in rem* es una acción completamente separada e independiente del procedimiento criminal que se dilucide contra el presunto autor del delito**. Por ello, la confiscación civil podría prevalecer aun cuando el Estado no haya obtenido un resultado favorable en el proceso penal. Esto, pues, como mencionáramos, **el enfoque en la confiscación civil no es si la persona incurrió en un delito, sino si la propiedad fue utilizada en una actividad ilegal** (e.g. si determinado vehículo de motor fue utilizado para transportar droga, independientemente de quién la transportó).[15] En ese escenario,

---

[14] Suárez v. ELA, 162 DPR 43, 52 (2004); Del Toro Lugo v. ELA, *supra*, pág. 983; Pueblo v. González Cortés, 95 DPR 164, 171 (1967).

[15] Esto sujeto a las correspondientes defensas reconocidas en nuestro ordenamiento (e.g. tercero inocente).

el derecho del Estado a tomar la propiedad surge, precisamente, de ese uso indebido.

En el caso particular de Puerto Rico, la Asamblea Legislativa históricamente ha optado por adoptar la confiscación *in rem*.[16] Así, cónsono con la doctrina discutida, reiteradamente este Tribunal ha aludido a las distinciones típicas entre la confiscación civil y la confiscación criminal. No obstante, **esa discusión se ha limitado a una referencia automática, casi dogmática, como parte de un repaso doctrinal del proceso de confiscación y la cual nunca ha tenido un impacto real en la adjudicación de las controversias que hemos considerado hasta el presente concerniente al tema de confiscación**.[17] Esto hasta tal punto de crear cierta confusión entre ambos tipos de confiscaciones.

Al momento de adjudicar las controversias suscitadas bajo las leyes de confiscaciones anteriores, y a pesar de que estas establecían la naturaleza *in rem* del procedimiento, este Tribunal siempre partió de la premisa fundamentada de que la Asamblea Legislativa tenía la intención de condicionar la acción civil de confiscación al resultado de la acción penal. Es por ello que consistentemente este Tribunal utilizó la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, para anular toda confiscación que estuviera acompañada de un dictamen favorable al imputado en el proceso

---

[16] Véanse, la derogada Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de junio de 1960, 34 LPRA ants. secs. 1721 y 1722, sustituida por la también derogada Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 34 LPRA ants. secs. 1723 - 1723(p), y la actual Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, *supra*.

[17] Véase, Coop. Seg. Mult. v. ELA, *supra*, págs. 664-665; Del Toro Lugo v. ELA, *supra*, págs. 981-983.

penal. Así, se avaló la disposición sumaria de las demandas de impugnación de confiscación sin una adjudicación en sus méritos, simplemente basados en los acontecimientos suscitados en la esfera penal. De esta forma, este Foro le ha brindado a la confiscación **civil** un tratamiento paralelo y fundamentado en las características esenciales de una confiscación **criminal**. Dicho tratamiento, a su vez, tuvo el efecto de igualar ambas modalidades de confiscación, a pesar de que la confiscación civil -o su respectiva impugnación- no se llevaba a cabo como parte del proceso criminal en contra de una persona. Veamos.

**B. Doctrina de impedimento colateral por sentencia y su aplicación al proceso de confiscación bajo la legislación derogada según las decisiones previas del Tribunal Supremo**

Sabido es que la doctrina de impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y la determinación es **concluyente** en un segundo pleito entre las **mismas partes**.[18] Es decir, la aplicación de esta doctrina depende de que un hecho fundamental en un proceso actual haya sido **expresamente** dilucidado como un *elemento clave* en un proceso anterior mediante una sentencia legítima y final entre las mismas partes.[19] De ese ser el caso, la doctrina de impedimento colateral por sentencia evita que las partes tengan

---

[18] Coop. Seg. Mult. v. ELA, 180 DPR 655, 672-673 (2011); Suárez v. ELA, 162 DPR 43, 59 (2004).

[19] Por "hecho necesario" o "elemento clave" nos referimos a que ese hecho que se pretende identificar en el segundo proceso como uno previamente adjudicado, haya sido **necesario** y **fundamental** en el razonamiento de la sentencia emitida por el Tribunal en el primer proceso. Sólo así, se podría establecer en estricto rigor jurídico, que ese hecho, en efecto, fue debidamente adjudicado mediante sentencia final y firme. Véanse, Beníquez v. Vargas, 184 DPR 2010, 225-226 (2012); Presidential v. Transcaribe, 186 DPR 263, 276-277 (2012).

la necesidad de litigar nuevamente un hecho ya adjudicado entre ellas en un dictamen anterior.[20]

En el contexto específico de las confiscaciones, este Tribunal ha utilizado esta **doctrina estatutaria** para concluir que la absolución en los méritos adjudica con finalidad irreversible el hecho central, tanto para el caso criminal como para el de confiscación, de que la propiedad **no fue utilizada** en una actividad ilícita. Por ello, desde Carlo v. Srio. de Justicia, 107 DPR 356 (1978), este Foro determinó que "[l]a doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron **hechos necesariamente decisivos** para el segundo".[21] En esa ocasión, este Tribunal específicamente delimitó el alcance de esta normativa a aquellas circunstancias en las que, efectivamente, se hubiese dado una absolución en los méritos que inevitablemente comprendiera la adjudicación de la cuestión central de que no se utilizó el objeto confiscado en una actividad delictiva.[22] Particularmente, el Tribunal expresó lo siguiente:

> La decisión que hoy tomamos está **estrictamente ceñida** a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado; **que su absolución en los méritos inevitablemente comprende la adjudicación de la cuestión central de que no**

---

[20] E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Vol. II, San Juan, Ed. Forum, 1992, págs. 376-385.

[21] Carlo v. Srio. de Justicia, supra, pág. 363.

[22] Íd., págs. 364-365.

**utilizó el vehículo para transportar material prohibido**.[23]

A pesar de esta delimitación, la realidad fue otra. Desde entonces, esta Curia aplicó la doctrina de impedimento colateral por sentencia a escenarios distintos al antes mencionado, y cuyo efecto directo consistió en condicionar la continuación de la acción civil de confiscación al resultado de la acción penal, independientemente de si en el proceso criminal se adjudicó o no en los méritos el hecho central de si la propiedad confiscada fue utilizada o no en una actividad prohibida por ley. Por ejemplo, en Del Toro v. ELA, 136 DPR 973 (1994), este Tribunal sostuvo que no procedía continuar con el proceso de confiscación de un vehículo de motor propiedad de un tercero cuando una determinación de no causa probable para acusar advino final y firme. Además, en esa ocasión, se determinó que no procedía sostener la confiscación cuando el proceso penal concluía luego del sobreseimiento del caso a raíz de la supresión de la única evidencia delictiva ocupada mediante un registro ilegal. Bajo ese escenario el Tribunal concluyó que

> la determinación final y firme respecto a la exclusión o supresión de una evidencia ilegalmente obtenida hecha en el procedimiento penal por el delito que da base a la confiscación, constituiría cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia.[24]

---

[23] Íd. (Énfasis suplido).
[24] Del Toro v. ELA, *supra*, pág. 997.

Aunque con un resultado distinto, pero cónsono con la tendencia de exigir un dictamen de culpabilidad en el proceso penal como condición necesaria para continuar el proceso civil de confiscación, en First Bank, Univ. Ins. Co. v. ELA, 156 DPR 77 (2002), este Tribunal determinó que la ausencia de causa probable en cuanto al poseedor del vehículo de motor confiscado, hijo del dueño registral, no impedía la confiscación de la propiedad, ya que uno de los pasajeros se había declarado culpable. De esta manera, esta Curia negó la aplicación de la doctrina de impedimento colateral por sentencia y ordenó la continuación del proceso de confiscación. No podemos pasar por alto que este Foro reconoció, incluso, la improcedencia de la anulación automática del proceso civil de confiscación basado en un resultado favorable en el proceso penal. Sobre este particular, este Foro expresó lo siguiente:

> La aplicación de la doctrina de impedimento colateral no afecta el hecho principal de que la confiscación es un procedimiento de carácter in rem, es decir, va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta. Por esto, **el impedimento colateral no aplica de manera automática al impugnar la confiscación del vehículo. Aunque el poseedor del vehículo resulte absuelto de los cargos imputados, esto no es en sí mismo suficiente para declarar inválida la confiscación. Lo determinante es si alguna actividad delictiva se ha cometido en el vehículo o mediante el uso del vehículo**, aunque la misma no haya sido cometido por el poseedor o conductor del mismo.[25]

Ahora bien, acorde con la tendencia de exigir un fallo o veredicto de culpabilidad para validar toda confiscación, igual

---

[25] First Bank, Univ. Ins. Co. v. ELA, *supra*, pág. 83. (Énfasis suplido).

conclusión alcanzó este Tribunal, posteriormente, en Suárez v. ELA, 162 DPR 43 (2004). En ese momento, este Tribunal determinó que la doctrina de impedimento colateral por sentencia impedía la continuación del proceso civil de confiscación en todo aquel caso en que los cargos criminales hubieran sido desestimados por incumplimiento con los términos de juicio rápido. En esta ocasión, los cargos criminales habían sido desestimados porque el Ministerio Público no cumplió con el término estatutario para la celebración de la vista preliminar. Transcurrido más de dos años sin la presentación de nuevos cargos criminales, este Tribunal entendió que procedía declarar con lugar la demanda de impugnación de confiscación ante la presunta dejadez reflejada por el Estado en el proceso penal.

Cuatro años más tarde, este Foro resolvió dos casos en los que reconoció dos escenarios adicionales en los cuales aplicaría automáticamente la doctrina de impedimento colateral por sentencia y que, consecuentemente, imposibilitaban la continuación de la acción civil de confiscación basado en el resultado del proceso penal, a saber: Ford Motor v. ELA, 174 DPR 735 (2008) y Díaz Morales v. Dpto. de Justicia, 174 DPR 956 (2008). En Ford Motor v. ELA, *supra*, la persona acusada se había declarado culpable por cargos de posesión de drogas y cumplido con todos los requisitos de un programa de desvío, por lo que el foro primario había ordenado el archivo y sobreseimiento del caso. Ante tales circunstancias, este Tribunal estableció que "el archivo y sobreseimiento de una acusación criminal al amparo de un programa de desvío y rehabilitación consti[tuía] cosa

juzgada en su modalidad de impedimento colateral por sentencia en una acción civil de impugnación de confiscación".[26]

En Díaz Morales v. Dpto. de Justicia, *supra*, -caso que involucraba a un menor en circunstancias análogas a las expuestas en el párrafo anterior- esta Curia resolvió que procedía declarar ha lugar una demanda civil de impugnación de confiscación una vez el menor cumpliera con el contrato de desvío y obtuviera un archivo definitivo de la causa penal. Según razonaron los miembros de este Alto Foro en aquel entonces, "una vez se archiva la denuncia, según los términos del programa, se adjudica de forma favorable al acusado y se dispone con finalidad del hecho central del cual depende la confiscación: la comisión de un acto delictivo".[27]

Finalmente, en Coop. Seg. Mult. v. ELA, 180 DPR 655 (2011), este Tribunal atendió la controversia sobre qué efecto tiene sobre el procedimiento civil de confiscación la muerte de una persona que presuntamente utilizó la propiedad confiscada en un acto delictivo. Ante esta interrogante, y aún vigente la Ley Uniforme de Confiscaciones de 1988, este Foro resolvió que procedía anular el proceso confiscatorio en la medida que la muerte de la persona imputada de delito extinguía la acción penal. **Una vez más, este Tribunal le impregnó un carácter criminal a la confiscación de naturaleza civil al no avalar la confiscación sin que alguien hubiese sido convicto de delito.**[28]

---

[26] Ford Motor v. ELA, *supra*, pág. 738.

[27] Díaz Morales v. Dpto. de Justicia, *supra*, págs. 962-963.

[28] No hay duda que en aquel momento ignoramos que la confiscación podía justificarse en la medida que el vehículo hubiera sido utilizado en una actividad delictiva, independientemente de que no hubiera podido instarse un proceso criminal contra una persona producto de su muerte.

En resumen, durante la vigencia de la Ley Uniforme de Confiscaciones de 1960 y la Ley Uniforme de Confiscaciones de 1988 este Tribunal reconoció varias excepciones que automáticamente anulaban el proceso civil de confiscación basado en las incidencias suscitadas en el proceso criminal. Esto, sin que hubiera una dilucidación en los méritos sobre la controversia específica concerniente al proceso civil sobre si la propiedad confiscada fue utilizada en alguna actividad prohibida por ley. De esta manera, previo a la aprobación de la nueva ley de confiscaciones había un "**decidido desarrollo** de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito".[29]

C.    **Fundamentos de la jurisprudencia anterior emitida por este Tribunal**

En este punto resulta meritorio destacar los fundamentos que sustentaron los pronunciamientos anteriores aquí repasados en los que, como vimos, este Tribunal constantemente condicionó la continuación del proceso civil de confiscación a lo acontecido a nivel penal.[30] Como hemos señalado en ocasiones pasadas, y como explicaremos a continuación, éstos estuvieron basados en **dos premisas** no articuladas o discutidas a profundidad en las opiniones de entonces que hoy, conforme a las disposiciones de la Ley Uniforme de Confiscaciones de 2011, *supra*, indudablemente cobran particular importancia: (1) en el presunto carácter "punitivo" del proceso de confiscación según

---

Tal proceder equiparó la confiscación *in rem* a la confiscación *in personam.*

[29] Coop. Seg. Mult. v. ELA, *supra*, pág. 676. (Énfasis suplido).

[30] Siendo éstos, también, en los que en el día de hoy se sustenta la Opinión mayoritaria.

estatuido en la legislación entonces vigente; y (2) en la voluntad legislativa del momento de vincular el proceso civil de confiscación al proceso penal.

*Primero*, no hay duda que un repaso de la jurisprudencia emitida por este Tribunal durante la vigencia de las leyes derogadas de confiscaciones de 1960 y 1988 nos lleva a constatar que, en efecto, este Foro le adjudicó constantemente un carácter "punitivo" al proceso de confiscación y lo caracterizó como un "castigo adicional" a la pena. Sin embargo, surge que este Tribunal alcanzó dicha conclusión sin consignar razonamiento alguno y basado exclusivamente en el fin de la Asamblea Legislativa de disuadir la actividad criminal.[31] Es otros términos, para entonces fue suficiente el que la legislación mencionara que tenía un objetivo disuasivo para que –sin mayor análisis y consideración– este Tribunal calificara el proceso de confiscación como uno punitivo. Ante tal objetivo, y la **expresa** intención legislativa de **entonces** de vincular la causa criminal contra el presunto autor del delito y la acción civil de confiscación, según discutiremos a continuación, este Tribunal evitó adoptar la clara doctrina federal dirigida a establecer si un proceso de confiscación puede calificarse como "punitivo" y "criminal" en su fin, aun cuando el Poder Legislativo lo haya estatuido como un proceso estrictamente civil. Por entender que el análisis de la doctrina federal es fundamental para la

---

[31] Véase, e.g., Coop. Seg. Mult. v. ELA, *supra*, pág. 680, donde este Tribunal se expresó en los siguientes términos:

> El proceso de incautación de propiedades al amparo de la Ley Uniforme de Confiscaciones es civil en su forma pero punitivo en su naturaleza. Su objetivo, claramente identificado por la Asamblea Legislativa, es castigar al delincuente con la pérdida de su propiedad, además de la posible pérdida de su libertad. A ello se refiere la Legislatura cuando habla del propósito disuasivo de la confiscación.

resolución correcta de la controversia que presenta este caso, no la pasaremos por alto.

*Segundo*, la jurisprudencia pasada emitida por este Tribunal, se sustentó en **la clara voluntad legislativa de entonces de vincular el proceso civil de confiscación al proceso penal**, según evidenciado en dos instancias distintas durante la vigencia de la Ley Uniforme de Confiscaciones de 1988. En primer lugar, hallamos que la Asamblea Legislativa tuvo la intención de promulgar una legislación que no fuera contraria a los pronunciamientos que este Tribunal había formulado previo a 1988. Sobre este particular, nótese que la Asamblea Legislativa de entonces específicamente consignó en el Informe Conjunto del Proyecto del Senado 1529 de 20 de mayo de 1988 que nada de lo contenido en lo que eventualmente sería la Ley Uniforme de Confiscaciones de 1988 alteraba la normativa adoptada hasta ese momento por este Tribunal Supremo en materia de confiscación.[32] Esto incluía, claro está, la norma establecida en Carlo v. Srio. de Justicia, *supra*, respecto a la aplicación de la doctrina de impedimento colateral por sentencia al procedimiento civil de confiscación, basado en el resultado favorable en la causa criminal.

En segundo lugar, es importante recordar que en el 2000 la Asamblea Legislativa aprobó la Ley Núm. 32-2000, la cual enmendó la Ley Uniforme de Confiscaciones de 1988, para disponer que el

---

[32] Véase, *Informe Conjunto del P. del S. 1529 de las Comisiones de lo Jurídico, de Transportación y Obras Públicas y de Hacienda del Senado de Puerto Rico de 20 de mayo de 1988*, 10ma. Asamblea Legislativa, 4ta Sesión Ordinaria, el cual en la página siete expresamente establece que "[n]ada en el P. del S. 1529 modifica la interpretación restrictiva a favor de la propiedad confiscada que el tribunal le ha dado a las disposiciones legales y vigentes sobre confiscación. Vázquez Fontánez v. Tribunal Superior, 103 D.P.R. 396 (1974); Carlo v. Secretario de Justicia, 107 D.P.R. 356 (1978)".

resultado de la acción penal no sería impedimento, ni tendría efecto de cosa juzgada sobre la acción civil de confiscación.[33] Tres años más tarde, esta enmienda fue derogada mediante la Ley Núm. 18-2003. Esto porque, según la intención y razonamiento de la **entonces** Asamblea Legislativa, era necesario ajustar el derecho positivo conforme a lo resuelto por este Tribunal en Carlo v. Srio. de Justicia, *supra*, y Del Toro Lugo v. ELA, *supra*.[34] De hecho, según surge del Informe sobre el Proyecto de la Cámara 1972 de la Comisión de la Jurídico del Senado de Puerto Rico –eventual Ley Núm. 18, *supra*– esta medida pretendía,

> resolver la situación surgida con la Ley Núm. 32, supra, a los fines de disponer que la absolución en los méritos de una persona en una causa criminal tendrá el efecto de hacer nula una confiscación de un

---

[33] Véase, Art. 2, inciso (c) de la Ley Núm. 32-2000 (2000 Leyes de Puerto Rico 376). El mencionado artículo establecía lo siguiente:

> Naturaleza de la acción. – El resultado favorable al acusado o imputado en cualquier de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal. Íd.

Sobre este particular, la parte expositiva de la Ley Núm. 32, *supra*, mencionaba lo siguiente:

> Aun cuando la doctrina jurisprudencial sobre la materia es clara, en nuestra jurisdicción se ha creado una gran confusión a raíz de las opiniones emitidas por el Tribunal Supremo. La presente medida va encaminada a precisar la naturaleza de la acción confiscatoria y a revisar otros aspectos de conformidad a la experiencia habida en la implantación de la Ley Núm. 93, antes citada.

> Consideramos que el resultado de la acción penal no debe ser impedimento, ni tener efecto de cosa juzgada, sobre la acción civil de confiscación, y para así establecerlo, se enmienda la Ley Núm. 93, antes citada, como se propone adelante.

Véanse, además: *Informe del P. de la C. 2621 de la Comisión de lo Jurídico de la Cámara de Representantes de 5 de noviembre de 1999*, 13era Asamblea Legislativa, 6ta Sesión Ordinaria, y la *Ponencia del Departamento de Justicia de 28 de septiembre de 1999 sobre el P. de la C. 2621*.

[34] Véase, Exposición de Motivos de la Ley Núm. 18-2003 (2003 Leyes de Puerto Rico 64).

vehículo hecha por el Estado a raíz de los mismos hechos que dieron lugar a su procesamiento criminal, en consideración a la doctrina constitucional de cosa juzgada en su modalidad de impedimento colateral por sentencia.

Tras una absolución en el caso criminal o determinación de no causa en la vista preliminar que ha advenido final y firme no existen tales elementos para sostener la confiscación en el caso civil por lo cual es forzoso concluir la improcedencia de continuar con el mismo.[35]

Como puede observarse, en aquel momento, la Asamblea Legislativa plasmó claramente su intención de reconocer la normativa adoptada por este Tribunal conforme a lo establecido originalmente en el historial legislativo de la Ley Uniforme de Confiscaciones de 1988. Es decir, afirmativamente avaló el que la acción civil de confiscación estuviera condicionada al resultado del proceso penal. Conforme a ello, los casos resueltos bajo la Ley Uniforme de Confiscaciones de 1988, particularmente los resueltos posterior al 2003, **respondieron a esa intención legislativa**. Así lo reconoció este Tribunal en Coop. Seg. Mult. v. ELA, *supra*, donde se expresó lo siguiente a la luz de las disposiciones de la -en aquel momento vigente- Ley Uniforme de Confiscaciones de 1988:

> **La Asamblea Legislativa ha reconocido el vínculo entre la causa criminal contra el presunto autor del delito base y la acción de confiscación**. De igual forma, la ley vigente [Ley Uniforme de Confiscaciones de 1988] coincide con nuestros pronunciamientos en cuanto a la aplicación de la doctrina de impedimento

---

[35] Informe sobre el P. de la C. 1972 de la Comisión de lo Jurídico del Senado de Puerto Rico, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, págs. 1-3. Aclaramos que, contrario a lo expresado por la Asamblea Legislativa en el citado extracto, la doctrina de impedimento colateral por sentencia es de índole **estatutario**.

colateral por sentencia que condiciona el proceso civil a la causa criminal. La Ley Núm. 18 de 1 de enero de 2003 enmendó la Ley Uniforme de Confiscaciones para eliminar el inciso que añadió la Ley Número 32 de 14 de enero de 2000 que disponía que el resultado favorable al acusado no sería impedimento a la acción civil de confiscación. **La Exposición de Motivos de la Ley Núm. 18 refleja con gran claridad el cambio en el modo de pensar en la Asamblea Legislativa y su decisión de vincular la causa criminal contra el presunto autor del delito con el proceso civil de confiscación.**[36]

Cónsono con estos pronunciamientos, a continuación examinamos minuciosamente la actual Ley Uniforme de Confiscaciones de 2011, de modo que lleguemos a la correcta interpretación del estatuto y podamos resolver si subsiste la intención legislativa reflejada en la derogada Ley Uniforme de Confiscaciones de 1988 y sus posteriores enmiendas. Es decir, si surge de las disposiciones de la Ley Uniforme de Confiscaciones de 2011 y/o de su historial legislativo la intención de la Asamblea Legislativa de condicionar el proceso civil de confiscación al resultado de la acción penal. Además, analizaremos si, a la luz de legislación vigente, persiste el objetivo disuasivo y si ello, de por sí, amerita que continuemos calificando como "punitivo" el proceso de confiscación.

**D.   Ley Uniforme de Confiscaciones de 2011**

Actualmente, el proceso de confiscación en Puerto Rico se rige por la Ley Uniforme de Confiscaciones de 2011, *supra*, la cual establece un procedimiento uniforme para todos los casos de confiscación en nuestra jurisdicción, independientemente de la

---

[36] Coop. Seg. Mult. v. ELA, *supra*, pág. 677. (Énfasis suplido y citas omitidas).

agencia involucrada y el fundamento para la misma.[37] De acuerdo a esta legislación, el Estado puede ocupar y hacer suya toda propiedad que sea utilizada durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos se encuentren tipificados en algún estatuto confiscatorio.[38]

Entre las nuevas disposiciones incluidas en la Ley Uniforme de Confiscaciones de 2011, *supra*, y pertinentes a este caso, encontramos que la Asamblea Legislativa expresamente dispuso el carácter **independiente** del procedimiento de confiscación con relación a cualquier otro proceso. Al respecto, el Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*, establece como política pública "la naturaleza *in rem* de las confiscaciones, **independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza**".[39] Cónsono con esta política pública, el Poder

---

[37] Véase, Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra.* (2011 Leyes de Puerto Rico 1761).

[38] Véase, Art. 9 de la Ley Uniforme de Confiscaciones de 2011, *supra*, 34 LPRA sec. 1724f, el cual dispone íntegramente lo siguiente:

> Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación.

> Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico.

[39] Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724). (Énfasis suplido).

Legislativo reiteró que "[e]l proceso de confiscación será uno civil dirigido contra los bienes e **independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados** bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado".[40]

Así las cosas, la propia legislación específicamente establece el proceso que las partes y los tribunales deben seguir durante la acción civil de impugnación de confiscación. El Art. 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*, establece -en su parte aquí pertinente- que "**se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso** penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos".[41] En ese contexto, "[e]l **demandante tiene el peso de la prueba** para derrotar la legalidad de la confiscación".[42] Asimismo, dispone que "[p]resentada la contestación a la demanda, el Tribunal ordenará una vista sobre legitimación activa para establecer si el demandante ejercía dominio y control sobre la propiedad en cuestión antes de los hechos que motivaron la confiscación. De no cumplir con este requisito, el Tribunal ordenará la desestimación inmediata del pleito".[43]

---

[40] Art. 8 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724e). (Énfasis suplido).

[41] Art. 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724l). (Énfasis suplido).

[42] Íd. (Énfasis suplido).

[43] Íd. Véase, además, Mapfre PRAICO, *et al.* v. ELA, *supra*.

En referencia a la derogada Ley Uniforme de Confiscaciones de 1988 y las respectivas interpretaciones formuladas por esta Curia, la Asamblea Legislativa expresó que "[d]icha Ley ha sido objeto de **múltiples enmiendas e interpretaciones judiciales que han causado confusión en la implantación del estatuto**".[44] Así que para efectos de dispersar cualquier duda sobre su intención de instituir un proceso de confiscación *in rem* y verdaderamente independiente, los legisladores incluyeron en la parte expositiva de la medida lo siguiente aclaración que, por su importancia, citamos *in extenso*:

> En nuestra jurisdicción, la confiscación es una acción civil o *in rem*, **distinta y separada de cualquier acción *in personam***. La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. **El procedimiento in rem tiene existencia independiente del procedimiento penal de naturaleza in personam, y no queda afectado en modo alguno por éste**. Los procedimientos de confiscación civil puede llevarse a cabo y culminarse antes de que acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. **Esto debido a que la acción civil se dirige contra la cosa en sí misma, en general, la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil**. Goldmith-Grant Co. v. United States, 254 U.S. 505 (1921). Calero-Toledo v. Pearson Yatch Leasing Co., 416 U.S. 663 (1974). United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984).[45]

Nótese que la referida exposición de motivos consigna, incluso, la jurisprudencia sobre la que fundamenta su intención

---

[44] Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra*. (2011 Leyes de Puerto Rico 1761). (Énfasis suplido).

[45] Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra*, pág. 1-2. (2011 Leyes de Puerto Rico 1762-1763).

de instituir una confiscación estrictamente *in rem*. En ninguna parte menciona alguna de las decisiones que este Tribunal emitió durante la vigencia de las legislaciones anteriores de confiscación. De esta manera, la política pública vigente establecida por la Asamblea Legislativa sobre confiscación **se distancia de las respectivas interpretaciones judiciales formuladas en el pasado**, particularmente en lo que respecta a condicionar la acción civil de confiscación al resultado del proceso penal.

De hecho, en la ponencia presentada por el Departamento de Justicia sobre el Proyecto del Senado 897 -eventual Ley Uniforme de Confiscaciones de 2011- éste expresó "preocupación por definir la naturaleza *in rem* o civil de la confiscación".[46] Índicó que "[a] efectos de evitar la más mínima confusión sobre los aspectos indicados, **es imprescindible introducir un lenguaje claro y preciso que establezca y mantenga distanciados los procesos criminales *in personam* y la confiscación a través de todo el texto de la ley**".[47] Precisamente, eso fue lo que hizo la Asamblea Legislativa en los Arts. 2, 8 y 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*, según expusimos.[48]

---

[46] Ponencia del Departamento de Justicia sobre el P. del S. 897 de 23 de julio de 2009, pág. 3.

[47] Íd. (Énfasis suplido).

[48] Consistentemente, ésta ha sido la posición del Poder Ejecutivo sobre este particular. A modo ilustrativo, hallamos que en una medida legislativa anterior dirigida a establecer la Ley Uniforme de Confiscaciones de 2006, se incluyeron disposiciones idénticas a las incluidas en la Ley Uniforme de Confiscaciones de 2011 en cuanto a la **independencia** del proceso de confiscación de cualquier otro proceso penal. Véase, e.g., Art. 8 del P. de la C. 2696, 15ta Asamblea Legislativa, 3ra Sesión Ordinaria. A raíz de esta propuesta, el entonces Secretario de Justicia comentó lo siguiente:

No hay duda que en la legislación actual se estableció un proceso civil *in rem* verdaderamente independiente al proceso penal *in personam*, abandonando así la pasada intención legislativa de vincular ambos procesos. Ante ello, resulta pertinente analizar si, en efecto, el proceso de confiscación confeccionado por el Poder Legislativo tiene un fin punitivo o criminal como se mencionaba en el pasado. De concluir que estamos ante un proceso de confiscación de carácter punitivo dirigido a castigar al presunto autor del delito, el marco de acción de la Asamblea Legislativa para regular su aplicación y procedencia podría verse limitado por aspectos constitucionales aplicables bajo ciertas y limitadas circunstancias.

---

Los términos de esta medida reconocen las diferencias existentes entre el proceso de confiscación *in rem* y cualquier acción criminal, o de otra índole, que pueda proceder de los mismos hechos. **Se persigue que, por ejemplo, el Estado pueda proseguir legítimamente con una acción de confiscación contra una propiedad cuando existe prueba suficiente de que la misma ha sido utilizada en actividad delictiva, aun cuando el Estado instar una acción criminal porque no se ha identificado con la certeza suficiente al autor del delito. Nótese que el Estado debe establecer la ocurrencia de una actividad delictiva y su relación con la propiedad confiscada**.

La propuesta legislativa permite atender el absurdo jurídico que impide que el Estado pueda confiscar, por ejemplo, un automóvil con cristales ahumados cuando existe evidencia en su interior, tales como casquillos de bala, que lo vinculan directamente a la comisión de un delito. Nótese que, en este tipo de caso, el Estado conoce la ocurrencia de una actividad delictiva y del uso del vehículo en su consecución. No obstante, no necesariamente se ha identificado al autor del delito, toda vez que los cristales ahumados impiden su identificación.

*Ponencia del Departamento de Justicia de 24 de enero de 2006 sobre el P. de la C. 2696 ante la Comisión de lo Jurídico y Seguridad Pública de la Cámara de Representantes, pág. 4.*

Sobre este particular, en United States v. Ward, 448 US 242 (1980), la Corte Suprema de los Estados Unidos elaboró un estándar de dos partes dirigido, precisamente, a contestar si un estatuto confiscatorio constituye en sí una medida punitiva de índole criminal o no. Al respecto, la Corte Suprema Federal expresó lo siguiente:

> Esta Corte a menudo ha reiterado que la interrogante sobre si una sanción es de índole civil o criminal es un asunto de interpretación estatutaria. Nuestra investigación en este respecto se ha realizado tradicionalmente en dos esferas. Primero, nos hemos dado a la tarea de determinar si el Congreso al establecer la sanción particular indicó expresa o implícitamente su preferencia por una etiqueta o la otra. Segundo, si el Congreso ha indicado la intención de establecer una sanción civil, hemos investigado más a fondo si el esquema estatutario era tan punitivo ya sea en su propósito o en su efecto como negar dicha intención. Respecto a esta última interrogante, hemos establecido que solo "la más clara evidencia" podría ser suficiente para establecer la inconstitucionalidad de una ley basado en dicho argumento.[49]

---

[49] United States v. Ward, *supra*, págs. 248-249. (Traducción nuestra y citas omitidas). En los propios términos de la Corte Suprema Federal, esta expresó específicamente lo siguiente:

> This Court has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."

En otros términos, la conclusión sobre si determinada sanción es verdaderamente de índole civil o penal debe estar precedida, en primer orden, de un análisis sobre si el Poder Legislativo consignó su intención, ya sea expresa o implícitamente, de caracterizar ésta como una civil o criminal. Es decir, este primer punto del análisis va dirigido específicamente a identificar la etiqueta "civil" o "criminal" que le dio o pretendió dar el Poder Legislativo a la sanción concerniente. Claro está, de concluir que el Poder Legislativo expresó su preferencia por una sanción criminal, resulta académico cualquier análisis posterior.

Empero, si de ese análisis surge la intención del Poder Legislativo de caracterizar determinado procedimiento como civil, procede entonces abordar el segundo punto del examen dirigido a auscultar si ésta es tan punitiva en su propósito o efecto que transforma en una sanción criminal lo que se pretendió imponer como una sanción civil.[50] En esta segunda parte del análisis, es necesario que la parte que formule tal alegación presente **_la más clara evidencia_** de que lo que el Poder Legislativo denominó como civil en realidad constituye una sanción de índole criminal.[51] De no existir tal evidencia, lo

---

[50] Íd., pág. 249. ("We turn then to consider whether Congress, despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'").

[51] Íd. (Traducción nuestra) ("In regard to this latter inquiry, we have noted that 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.'"); págs. 250-251 ("Nor are we persuaded by any of respondent's other arguments that he has offered the 'clearest proof' that the penalty here in question is punitive in either purpose or effect."). Reiterado en United States v. One Assortment of 89 Firearms, 465 US 354, 366 (1984) ("Mulcahey has failed to establish by the "clearest proof" that Congress has provided a sanction so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty.").

único que procede es que el Tribunal confirme el carácter civil que le brindó o pretendió brindar, en primera instancia, el Poder Legislativo a la sanción concerniente.

Subsiguientemente, la Corte Suprema de Estados Unidos reafirmó este análisis en United States v. Ursery, 518 US 267 (1996), caso en el cual confirmó su dictamen de United States v. One Assortment of 89 Firearms, 465 US 354 (1984), a los efectos de que un estatuto confiscatorio civil no viola la Quinta Enmienda de la Constitución Federal a aplicarse a un individuo que ha sido absuelto o condenado mediante sentencia, siempre y cuando éste no sea punitivo en su naturaleza.[52] Para sostener tal carácter civil de la confiscación, el Tribunal Supremo de los Estados Unidos examinó los estatutos confiscatorios concernientes mediante el discutido análisis de dos partes. Respecto a la primera parte, la Corte sostuvo que era indudable que el Congreso tuvo la intención de establecer un proceso meramente civil.[53] Siendo así, pasó a la segunda parte del análisis y concluyó que existía "poca evidencia, y mucho menos la prueba más clara requerida" de que el proceso de confiscación establecido por el Congreso era tan punitivo en su naturaleza o efecto que lo convertía en una sanción criminal.[54]

Para alcanzar tal conclusión, en United States v. Ursery, supra, la Corte Suprema de Estados Unidos destacó varios puntos importantes y pertinentes a nuestra legislación local. Primero,

---

[52] United States v. Ursery, supra, pág. 292. ("We hold that these in rem civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause.").

[53] Íd., págs. 288-290.

[54] Íd., pág. 290. (Traducción nuestra).

expresó el entendido de que las confiscaciones civiles *in rem* históricamente no constituyen un "castigo".[55] *Segundo*, resaltó que en los estatutos confiscatorios concernientes no se requería demostrar intención criminal en el uso de la cosa y aclaró que aun cuando éstos contienen una excepción de tercero inocente, ello de por sí no compele a la conclusión de que se desea castigar a una persona.[56] *Tercero*, señaló que si bien puede decirse que tales estatutos sirven un propósito disuasivo, la realidad es que tal objetivo es válido tanto para procesos de confiscación puramente civiles como para procesos criminales.[57] Finalmente, enfatizó que el solo hecho de que los estatutos confiscatorios estén atados o supeditados a una actividad criminal no es suficiente para establecer mediante "la más clara evidencia" que el proceso denominado como civil realmente es de carácter punitivo en su naturaleza o efecto.[58]

Al extrapolar tal análisis y escrutinio a nivel local con el objetivo de auscultar si el proceso de confiscación establecido en la Ley Uniforme de Confiscaciones de 2011 constituye una sanción meramente civil o penal, no podemos alcanzar otra conclusión que no sea que ésta es **puramente civil y remediativa**. Según indicáramos, no hay duda de que la Asamblea Legislativa aprobó la legislación vigente con la intención expresa de establecer un proceso **administrativo** *in rem* de estricto carácter civil e independiente de cualquier otra acción

---

[55] Íd., pág. 291.

[56] Íd., págs. 291-292.

[57] Íd., pág. 292.

[58] Íd.

de naturaleza penal, administrativa o de cualquier otra naturaleza.

La realidad es que un simple repaso de la legislación concerniente evidencia la inexistencia de "la más clara evidencia" que nos lleve a concluir que, en efecto, estamos ante un estatuto de carácter punitivo. Nótese que la ley vigente no requiere demostrar que hubo intención criminal por parte de la persona que utilizó la cosa de forma ilícita para que proceda la confiscación. Como explicáramos, en el proceso civil estatuido únicamente se requiere demostrar la conexión entre la propiedad confiscada y su uso en una actividad prohibida por ley, independientemente de quién la utilizó o si tenía tal intención o no.

Además, aunque la legislación vigente podría permitir que se presente evidencia de la inocencia del dueño en ciertas circunstancias, esto, por sí solo, no es suficiente para atribuirle a la legislación un ánimo de castigar. La clara intención de la Asamblea Legislativa de disuadir la actividad criminal, según surge de la ley y de su historial, obligan a concluir que estamos ante una ley de naturaleza **civil y remediativa**. Como bien señalara la Corte Suprema de Estados Unidos, **tal elemento disuasivo de la actividad criminal no es en sí suficiente para categorizar un proceso civil de confiscación como uno de naturaleza criminal**.

## II

En el caso que hoy atendemos, la situación que presuntamente dio lugar a la confiscación del vehículo de motor fue su utilización en violación del Art. 404 de la Ley de

Sustancias Controladas, 24 LPRA sec. 2404. Por los mismos hechos que dieron lugar a la confiscación se denunció al Sr. Jorge Salas Ríos. Así las cosas, se adujo que en el proceso criminal en su contra, el señor Salas Ríos se sometió al mecanismo establecido en la Regla 247.1 de las Reglas de Procedimiento Criminal, *supra*.

En vista de la alegada —no probada— exoneración y sobreseimiento de las acusaciones, Mapfre Preferred Risk Ins. Co. y Reliable Financial Services Inc. (en conjunto, peticionarias), solicitaron se dictara sentencia sumaria a su favor en el proceso de impugnación de la confiscación que habían presentado. Arguyeron que, conforme el resultado favorable en el proceso criminal en contra del señor Salas Ríos, era de aplicación la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia.[59]

Ahora bien, tanto el Tribunal de Primera Instancia, como el Tribunal de Apelaciones, concluyeron correctamente que el resultado favorable en la causa criminal en contra del señor Salas Ríos no conllevaba la invalidez, ilegalidad y falta de corrección de la confiscación del vehículo en cuestión. Acertadamente concluyeron que las peticionarias, conforme los postulados de la nueva Ley Uniforme de Confiscaciones de 2011, *supra*, estaban obligadas a presentar otra evidencia que permitiera concluir que la propiedad confiscada no fue utilizada en violación del Art. 404 de la Ley de Sustancias Controladas,

---

[59] Del expediente no surge que las peticionarias presentaran, junto a la solicitud para que dictara sentencia sumaria a su favor, la prueba que sustentara ni siquiera su alegación en cuanto al resultado favorable en el proceso criminal. Ahora bien, reiteramos que dicha prueba por si sola no es suficiente para anular la confiscación realizada.

*supra*. Ante la ausencia de tal prueba, concluyeron que, como cuestión de derecho, no procedía dictar sentencia sumaria a su favor.

En un escenario como el del presente caso, surge la interrogante de si el mero hecho del sobreseimiento de los cargos en virtud de la Regla 247.1, *supra*, constituye **prueba preponderante** de la no utilización del vehículo confiscado en una actividad ilegal que, a su vez, permitiera dictar por la vía sumaria una sentencia a favor de las peticionarias. **Evidentemente, no**.

Nótese que en el pasado emitimos varios dictámenes en casos que presentaban situaciones sumamente similares a la que tenemos ante nuestra consideración. En aquel entonces, a la luz de la Ley Uniforme de Confiscaciones de 1988, anulamos las confiscaciones ante el "dictamen favorable" en un caso criminal que se hubiera presentado por los mismos hechos que dieron lugar a la confiscación. Como vimos, particularmente, este Foro atendió una situación casi idéntica en Ford Motor v. ELA, *supra*.

Ahora bien, según reseñáramos, las pasadas determinaciones de este Tribunal estuvieron enmarcadas en lo que **hasta aquel momento** era la voluntad e intención expresada por la Asamblea Legislativa. Como observáramos, a pesar de que en la legislación de 1988 se reconocía el carácter *in rem* de las confiscaciones, el Poder Legislativo afirmativamente acogió el matiz *in personam* que por varias décadas este Tribunal le otorgó al procedimiento *in rem* al condicionar la continuación del proceso de confiscación a los acontecimientos a nivel penal.[60] Así que en

---

[60] Véase, parte I, sección C de esta Opinión.

virtud de dicha intención se mantuvieron vinculados ambos procesos, tanto el procedimiento criminal en contra de la persona imputada de delito como la acción civil de confiscación.

**Esto contrasta enormemente con la actual Ley Uniforme de Confiscaciones de 2011**. En ésta, la Asamblea Legislativa, conociendo la interrelación que en el pasado este Tribunal estableció entre el proceso civil y el proceso penal, específicamente consignó su voluntad de desligar, distanciar y diferenciar la acción criminal dirigida contra una persona de aquella acción confiscatoria a nivel civil dirigida contra la propiedad en particular. Esta intención legislativa, según expuesto en la sección anterior, surge de cada parte del historial legislativo de la Ley Uniforme de Confiscaciones de 2011, *supra*, incluyendo el propio texto de la ley, su exposición de motivos, los informes de las respectivas comisiones legislativas, e incluso las ponencias presentadas.[61] Es decir, de una evaluación completa y cuidadosa del referido estatuto.

Así, por ejemplo, el Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*, establece que en nuestra jurisdicción las confiscaciones serán de naturaleza *in rem* y, como consecuencia, independientes de cualquier otra acción de naturaleza penal, administrativa o de otra índole que pudiera llevarse en contra del dueño o del poseedor de los bienes ocupados.[62] Este principio de separabilidad e independencia fue reiterado más adelante por el Poder Legislativo al expresar literalmente -y por primera vez como parte integral de la

---

[61] Véase, parte I, sección D de esta Opinión.

[62] Véase, Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*.

legislación en claro contraste con las leyes anteriores- su intención de mantener la confiscación civil separada del procedimiento criminal y dirigida exclusivamente a dilucidar el involucramiento del bien confiscado en una actividad prohibida por ley.[63] De esta manera, no hay duda de que la Asamblea Legislativa pretendió **distanciarse** del desarrollo jurisprudencial bajo el cual el proceso civil de confiscación quedaba condicionado al resultado de la causa criminal contra el alegado autor del delito. Cónsono con ese claro distanciamiento, el Poder Legislativo **modificó el enfoque** y estableció explícitamente un procedimiento civil **verdaderamente _in rem_** cónsono a sus típicas características y la independencia establecida respecto a cualquier otro proceso que pueda surgir del mismo conjunto de hechos.[64] Adviértase, como mencionamos anteriormente, que la Asamblea Legislativa aclaró en la parte expositiva de la  Ley Uniforme de Confiscaciones de 2011, _supra_, que el procedimiento de confiscación _in rem_ "**no queda[ría] afectado en modo alguno**" por el procedimiento criminal _in personam_.[65] En ese sentido, la Asamblea Legislativa precisó, como lo hizo a través de varias disposiciones de la propia ley, que la validez de la confiscación no estaría supeditada al resultado del proceso criminal. Tal aclaración parece ser ignorada por una mayoría de este Tribunal.[66]

---

[63] Véase, Íd., Art. 8.

[64] Véase, Parte I, Sección A de esta Opinión.

[65] Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, _supra_, pág. 1-2 (2011 Leyes de Puerto Rico 1762-1763).

[66] La Opinión mayoritaria falla al concluir que, como en el pasado nos referimos a la confiscación como un proceso independiente, lo que hizo la Asamblea Legislativa fue incorporar nuestros pronunciamientos a la legislación vigente. Sin embargo, -como hemos discutido- un examen de la Ley Uniforme de Confiscación de 2011, _supra_, hace evidente que la

Bajo esas circunstancias, utilizar el resultado favorable obtenido por el imputado en el proceso penal para aplicar la doctrina de impedimento colateral por sentencia en el proceso civil de confiscación, constituye un curso de acción que va en contra de la voluntad legislativa diáfanamente expresada en la Ley Uniforme de Confiscaciones de 2011, *supra*. Después de todo, precisamente, eso fue lo que quiso evitar el legislador al disponer sobre la independencia de los procedimientos y reiterar una y otra vez la naturaleza estrictamente *in rem* de la confiscación en nuestra jurisdicción.

La realidad es que, más allá de ese ejercicio válido de establecimiento de política pública, tal independencia entre el proceso civil de confiscación y la acción penal tiene perfecta lógica y congruencia jurídica.[67] Esto porque al final de todo se tratan de dos acciones judiciales que -si bien surgen de un mismo conjunto de hechos- **responden a fines y cuestionamientos distintos bajo diferentes estándares de prueba**. Por un lado, la acción civil de confiscación lo que busca es establecer mediante **preponderancia de la prueba** que la propiedad confiscada fue utilizada en una actividad prohibida por ley. Mientras que la acción penal busca establecer **más allá de duda razonable** que el

---

Asamblea Legislativa tuvo la intención de ir más allá y modificar la normativa que se había desarrollado bajo las leyes de confiscaciones derogadas. Así, parece ser que la mayoría de este Tribunal está decida a perpetuar la confusión que nuestras pasadas determinaciones generaron y que la Asamblea Legislativa pretendió eliminar mediante la aprobación de la Ley Uniforme de Confiscaciones de 2011, *supra*, y, a su vez, convertir en **letra muerta** algunas de las disposiciones contenidas en la referida ley.

[67] Así ha sido reconocido, incluso, por el Tribunal Supremo de los Estados Unidos en multiplicidad de casos aún vigentes. Véase, e.g., Bennis v. Michigan, 516 US 442, 452 (1996); United States v. One Assortment of 89 Firearms, 465 US 354 (1984); Calero-Toledo v. Pearson Yatch Leasing Co., 416 US 663 (1974); Goldmith-Grant Co. v. United States, 254 US 505 (1921).

imputado o acusado cometió un delito. En tales circunstancias, es jurídicamente sostenible no condicionar la acción civil de confiscación a lo que acontezca en la acción penal. Tan es así que, como hemos resaltado en esta Opinión disidente, nuestro ordenamiento jurídico actual **no** establece que la confiscación de una propiedad va a depender de la presentación de cargos criminales y mucho menos de la obtención de una sentencia condenatoria a nivel penal.[68] Reiteramos que la Ley Uniforme de Confiscaciones de 2011, *supra*, enmarcó la voluntad legislativa expresa de que el procedimiento de confiscación *in rem* no quedara afectado **de modo alguno** por el procedimiento criminal *in personam*.[69]

Ciertamente, estas distinciones no alteran nuestra bien concebida norma de que las confiscaciones no son favorecidas por los tribunales y, como consecuencia, los estatutos

---

[68] De hecho, esta posibilidad fue descartada, incluso, como parte de los debates suscitados durante la Convención Constituyente de Puerto Rico. III Diarios de Sesiones de la Convención Constituyente de Puerto Rico, 1569-1581 (1961). Cónsono con ello, puede haber ocasiones en que el Estado simplemente no tenga conocimiento de quién utilizó la propiedad en una actividad ilegal, pero como cuestión de hecho sí se sabe que fue utilizada con tales propósitos. Tal sería el caso, por ejemplo, de un automóvil abandonado con sustancias controladas en su interior. Ante tal hallazgo, no hay duda de que la propiedad fue empleada en la comisión de una actividad ilegal (almacén o transporte de sustancias controladas), pero por estar abandonada el Estado desconoce quién la utilizó para ello. ¿Supone ese desconocimiento del autor del delito un impedimento para que el Estado pueda confiscar la propiedad? No. Esto porque, como hemos explicado, bajo la modalidad civil de confiscación la pregunta no es quién utilizó la propiedad, sino **si la propiedad, en efecto, fue utilizada en una actividad ilegal**.

[69] Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra*, pág. 1-2. (2011 Leyes de Puerto Rico 1762-1763).

confiscatorios deben interpretarse restrictivamente.[70] Ahora bien, los tribunales estamos autorizados a interpretar una legislación cuando "esta no es clara o concluyente sobre un punto en particular".[71] De ese ser el caso, "debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar una legislación, de manera que nuestra interpretación asegure la efectividad de la intención legislativa".[72] De esta forma evitamos una interpretación contraria a esa intención y, por ende, una usurpación al Poder Legislativo.

En el caso particular de la Ley Uniforme de Confiscaciones de 2011, la Asamblea Legislativa fue clara y categórica sobre su propósito de establecer como política pública una separación e independencia, es decir, **no** condicionada entre el proceso civil de confiscación y la causa penal que podría producirse a consecuencia de los mismos hechos. Ahora bien, teniendo ese propósito claro, ¿sería procedente utilizar exclusivamente el resultado favorable obtenido por el imputado para disponer y anular **automáticamente** la confiscación? ¿Estaría conforme a la voluntad legislativa continuar el desarrollo jurisprudencial de este Tribunal en el cual la procedencia de la confiscación estaba condicionada a lo que aconteciera a nivel penal? **Indudablemente, no**.

---

[70] Coop. Seg. Mult. v. ELA, *supra*, pág. 668; Del Toro Lugo v. ELA, *supra*, pág. 988; Suárez v. ELA, *supra*, pág. 64; Carlo v. Srio. de Justicia, *supra*, pág. 363; Pueblo v. González Cortes, 95 DPR 164, 168 (1967).

[71] Brau, Linares v. ELA, 190 DPR 315, 340 (2014); Rivera Fernández v. Mun. de Carolina, 190 DPR 196, 202 (2014); Consejo Titulares v. Gómez Estremera, 184 DPR 407 (2012), citando a Pueblo v. Ortega Santiago, 125 DPR 203, 214 (1990).

[72] Romero Barceló v. ELA, 169 DPR 460, 500-501 (2006); Rexach v. Ramírez Vélez, 162 DPR 130 (2004), citando a Pérez v. Mun. de Lares, 155 DPR 697, 706-707 (2001).

Sería un contrasentido establecer por un lado que los procesos son independientes y, por el otro, interrelacionarlos de tal manera que lo que ocurra en uno predetermine el desenlace del otro. Ante tales circunstancias estábamos impedidos de alterar las normas estatutarias aplicables al caso ante nuestra consideración. Así, teníamos el deber de reafirmar el legítimo ejercicio de establecimiento de política pública promovido por la Asamblea Legislativa mediante la aprobación de la Ley Uniforme de Confiscaciones de 2011, *supra*.

Como hemos sostenido en reiteradas ocasiones, si bien es cierto que la actual Ley Uniforme de Confiscaciones, *supra*, no incluye una disposición sobre la doctrina de impedimento colateral por sentencia –tal y como se incluyó en su momento mediante la derogada Ley Núm. 32-2000– la realidad es que **su aplicación a los casos que hoy atendemos es completa y absolutamente incompatible con varias de las disposiciones que sí fueron incluidas en la Ley**.[73] En ese sentido, los tribunales no podemos utilizar nuestra función interpretativa para distanciarnos e invalidar el **contenido expreso y claro** de una ley bajo el pretexto de que el legislador no incluyó determinado lenguaje. Nuestro deber no es juzgar cómo el legislador debió expresar su intención legislativa, sino auscultar **si determinada interpretación y resultado es compatible con la voluntad del**

---

[73] Véase, Arts. 2, 8 y 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*, los cuales, como discutimos en secciones anteriores, dejan claro la voluntad de la Asamblea Legislativa de establecer un proceso civil de confiscación independiente de lo acontecido a nivel penal. Esto, indudablemente, no brinda espacio para otra interpretación estatutaria que no sea la inaplicabilidad de la doctrina de impedimento colateral por sentencia o de cualquier otra doctrina que condicione la continuación de la confiscación al resultado de otro procedimiento.

**legislador reflejada en trámite, discusión y el propio texto de la ley**.

No hay duda de que validar la aplicación de la doctrina de impedimento colateral por sentencia, la aplicación de cualquier otra doctrina de índole estatutaria o continuar **reconociendo presuntas excepciones** a la independencia que debe caracterizar el proceso *in rem* de confiscación constituiría un ejercicio impropio de **legislación judicial**. Lo anterior en la medida que se ignorarían y menoscabarían las disposiciones que sí fueron incluidas en la Ley Uniforme de Confiscaciones de 2011, *supra*.[74]

Por todo lo anterior, este Tribunal debió concluir que los tribunales no pueden disponer de la acción civil de confiscación basados **exclusivamente** en el resultado obtenido por el imputado a nivel penal, mucho menos cuando tal determinación se produce como consecuencia de un fundamento ajeno a los méritos del caso penal en sí. Según las disposiciones de la Ley Uniforme de Confiscaciones de 2011, *supra*, la procedencia de la confiscación debe ser adjudicada a nivel civil por preponderancia de la prueba y en completa independencia de lo que haya acontecido a nivel penal. Así que, en ausencia de algún otro planteamiento procedente en derecho, los foros primarios deberían dilucidar las demandas civiles de impugnación de confiscación en sus méritos, conforme al proceso delineado por la Asamblea Legislativa en la legislación vigente.

---

[74] Ello sin mencionar las posibles incongruencias jurídicas que sustantivamente supone la aplicabilidad de esta doctrina en el contexto de un proceso civil de confiscación basado en lo acontecido en un proceso de índole penal, el cual, en muchas ocasiones, ni tan siquiera concluye mediante una *sentencia* luego de un proceso adjudicativo en sus méritos.

Claro está, no siempre la determinación del foro primario en una demanda de impugnación de confiscación estará basada en su adjudicación en los méritos. En ese sentido, los tribunales podrían resolver este tipo de pleito utilizando todos los mecanismos disponibles bajo nuestras Reglas de Procedimiento Civil, incluso disponer del mismo por la vía sumaria, si así procede en derecho. Ahora bien, la disposición del recurso **no puede descansar en el mero resultado favorable obtenido por el imputado a nivel penal**, como ocurría en el pasado bajo la derogada Ley Uniforme de Confiscaciones de 1988. Si la parte demandante interesa obtener un dictamen sumario, por ejemplo, deberá entonces ubicar en posición al tribunal sobre su procedencia, pero su petición no puede basarse exclusivamente en la obtención de un dictamen favorable en la causa criminal.

Así, la Regla 247.1 de Procedimiento Criminal, *supra*, lo que dispone es que

> [e]l tribunal **luego del acusado hacer una alegación de culpabilidad y sin hacer pronunciamiento de culpabilidad** cuando el Secretario de Justicia o el fiscal lo solicitare y presentare evidencia de que el acusado ha suscrito un **convenio para someterse a tratamiento y rehabilitación** en un programa del Estado Libre Asociado de Puerto Rico, privado, supervisado y licenciado por una agencia del Estado Libre Asociado, así como una copia del convenio, podrá suspender todo procedimiento y someter a dicha persona a **libertad a prueba bajo los términos y condiciones razonables que tenga a bien requerir**, y por el término dispuesto en el convenio para la rehabilitación del acusado el cual no excederá de cinco (5) años. El tribunal apercibirá al acusado que, de abandonar dicho programa será sancionado conforme a lo dispuesto en el Artículo 232 de la Ley Núm. 115 de 22 de Julio de 1974, según enmendada.
>
> Como parte de los términos del convenio estará el consentimiento del acusado a que, de cometer un

delito grave, se celebre conjuntamente con la vista de determinación de causa probable, la vista sumaria inicial que disponen la Ley Núm. 259 de 3 de abril de 1946, según enmendada. La determinación de causa probable de la comisión de un nuevo delito es causa suficiente para, en ese momento, revocar provisionalmente los beneficios de libertad a prueba.

En el caso de incumplimiento de una condición de la libertad a prueba, el tribunal podrá dejar sin efecto la libertad a prueba y proceder a dictar sentencia siguiendo lo dispuesto en la Ley Núm. 259 de 3 de abril de 1946, según enmendada.

Si durante el período de libertad a prueba la persona no viola ninguna de las condiciones de la misma, el tribunal, en el ejercicio de su discreción y previa celebración de vista, podrá exonerar a la persona y sobreseer el caso en su contra. **La exoneración y sobreseimiento bajo esta Regla se llevará a cabo sin declaración de culpabilidad por el tribunal, en carácter confidencial, no accesible al público y separado de otros récords, a los fines exclusivos de ser utilizados por los tribunales al determinar si en procesos subsiguientes, la persona cualifica bajo esta Regla.**

**La exoneración y sobreseimiento del caso no se considerará como una convicción a los fines de las descualificaciones o incapacidades impuestas por ley a los convictos por la comisión de algún delito**, y la persona así exonerada tendrá derecho a que el Superintendente de la Policía le devuelva cualesquiera récord de huellas digitales y fotografías que obren en poder de la Policía de Puerto Rico, tomadas en relación al caso sobreseído.

La exoneración y sobreseimiento de que trata esta Regla podrán concederse en solamente una ocasión a cualquier persona.

La aceptación por un acusado del sobreseimiento de una causa por el fundamento señalado en esta Regla constituirá una renuncia a la desestimación de la

acción por los fundamentos relacionados en los incisos (e), (f), (m) y (n) de la Regla 64.[75]

No hay duda que someterse al proceso establecido en la Regla 247.1 de Procedimiento Criminal, *supra*, y la posterior exoneración del imputado y sobreseimiento de los cargos, no constituye una determinación de que la propiedad confiscada no fue utilizada en alguna actividad ilegal. Un examen de la Regla 247.1 de Procedimiento Criminal, *supra*, y el Art. 404(b) de la Ley de Sustancias Controladas, *supra*, deja claro que dicha adjudicación no se genera en el caso criminal. En ese sentido, el sobreseimiento de los cargos en contra del acusado ni siquiera constituye la adjudicación del **hecho central** del proceso civil de impugnación de la confiscación.[76] En realidad lo que sucede es que el acusado tiene el beneficio de someterse a un proceso que, finalmente, evitara que se vea perjudicado como sucede en el caso de convicciones ordinarias. Ello no significa que la propiedad que pudo haberse confiscado por los mismos hechos no se utilizó en violación de alguna disposición penal que permita su confiscación. Por el contrario, **para todos los efectos, la propiedad pudo haber sido utilizada en la comisión de una actividad ilegal o ser producto de esta**.

Así las cosas, en circunstancias como las del presente caso, en las cuales se presentó una solicitud de sentencia sumaria en el proceso de impugnación de la confiscación por

---

[75] (Énfasis suplido).

[76] Incluso, véase que si la persona incumple con los términos del convenio, el tribunal puede dejar sin efecto la libertad a prueba y dictar la sentencia que proceda por el delito bajo el cual hizo alegación de culpabilidad. D. Nevares-Muñiz, <u>Sumario de derecho procesal penal puertorriqueño</u>, 9na ed. rev., San Juan, Instituto para el Desarrollo del Derecho Inc., 2011, pág. 158.

parte de los demandantes fundándose en el sobreseimiento de los cargos criminales en contra de una persona, son de total aplicación -y de suma importancia- las disposiciones de la Ley Uniforme de Confiscaciones de 2011, *supra*, que establecen que la confiscación puede realizarse aunque no se haya presentado acusación alguna contra ninguna persona o antes de su culpabilidad o absolución. Como mencionamos anteriormente, esta disposición se debe a la clara intención legislativa de establecer un proceso separado e independiente, que no se afecta de modo alguno, por cualquier procedimiento penal que pudiera o pueda estar llevándose a cabo por los mismos hechos.[77] Así, ante la evidente distinción de un proceso de confiscación *in personam*

---

[77] No podemos pasar por alto que ni siquiera las peticionarias, **teniendo el peso de la prueba**, presentaron evidencia que sostuviera las alegaciones en su solicitud de sentencia sumaria respecto al resultado favorable en el proceso criminal. Sobre ese particular debemos resaltar que la propia Opinión de conformidad emitida por la Jueza Asociada señora Pabón Charneco lo reconoce al expresar que

> **[n]o surge de los autos el dictamen del foro de instancia decretando el archivo y sobreseimiento de la causa criminal contra el señor Salas Ríos, ni prueba que lo acredite**. Ahora bien, de los autos surgen alegaciones que apuntan a que el señor Salas Ríos en efecto se sometió a un programa de desvío bajo la Regla 247.1 de Procedimiento Criminal, *supra*. También hay prueba de que el foro primario requirió al Estado que informara sobre el progreso de dicho programa.

Op. de conformidad emitida por la Jueza Asociada señora Pabón Charneco, págs. 15-16. Por ello, ni siquiera ante la interpretación errónea que hace la mayoría del Tribunal se justificó declarar con lugar la solicitud de sentencia sumaria que presentaron las peticionarias. Aunque en la Sentencia que en el día de hoy emite este Tribunal se decide "revocar", la **realidad es que confirma** la determinación de declarar no ha lugar la solicitud de sentencia sumaria presentada por las peticionarias pero por otros fundamentos. SLG Pérez-Otero v. ELA, 192 DPR 298, 326 (2015) (Opinión disidente de la Jueza Asociada señora Pabón Charneco) ("la revisión se da contra el resultado y no contra los fundamentos"). En ese sentido el resultado del caso es el mismo: reconocer que no procedía dictar sentencia sumaria a favor de las peticionarias.

y el proceso de civil de confiscación *in rem* adoptado por nuestra Asamblea Legislativa, no procedía vincular, condicionar y hacer depender la validez de la confiscación al resultado favorable en el proceso criminal que se llevó a cabo en contra de una persona. Como indicamos a través de esta Opinión disidente, tal conclusión no se justifica a la luz de la nueva Ley de Confiscaciones de 2011, *supra*.

## III

En vista de que la mayoría de este Tribunal decide revocar el dictamen correcto del Tribunal de Apelaciones, que denegó expedir un recurso de *certiorari* para revisar la determinación del foro primario de no aplicar la doctrina de impedimento colateral por sentencia al presente caso, no me resta más que disentir. En su lugar, conforme la normativa que detalladamente he evaluado y examinado a través de esta Opinión disidente, hubiera **confirmado** el dictamen recurrido y validado la intención de la Asamblea Legislativa establecer verdaderamente la independencia y separabilidad que caracteriza el proceso civil de confiscación *in rem*.

Edgardo Rivera García
Juez Asociado